COLUMBUS CREDIT COMPANY et al., Appellants,

v.

EVANS et al., Appellees.

[Cite as *Columbus Credit Co. v. Evans* (1992), 82 Ohio App.3d 798.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–549.

Decided Sept. 29, 1992.

*Schrim & Greenwald, Gary D. Greenwald* and *John E. Haller,* for appellants.

*Szolosi & Fitch, Stephen C. Fitch* and *Kimberly A. Rye,* for appellees.

Cox, Judge.

Plaintiffs appeal from a judgment entered by the Franklin County Court of Common Pleas disqualifying plaintiffs' counsel. The trial court disqualified plaintiffs' counsel because of a conflict of interest arising from his representation of defendants in a separate action pending in federal district court.

Plaintiff Columbus Credit Company is an Ohio corporation which provides billing, bookkeeping, collection and administrative services for health care businesses. Plaintiff Rebecca Parrett is the majority stockholder of Columbus Credit and serves as its president. Defendants Dr. T. William Evans and

Ruth Evans are minority stockholders in Columbus Credit and serve on the board of directors. Defendants Urgent Medical Care, Inc. ("UMCI"), Urgent Medical Care, Inc. of Florida ("UMCF"), Primary Medical Associates, Inc. ("PMAI"), and defendant Emergency Medical Associates, Inc. ("EMAI"), are Ohio professional corporations either wholly or partly owned by defendant Dr. William Evans. These corporations ("the Evans entities") own, operate and provide physician staffing for various urgent medical care centers and hospital emergency rooms in Columbus, Pittsburgh and Florida.

Sometime during the early to mid 1970s, Parrett began working for defendant Dr. William Evans and ultimately held a variety of positions in the Evans entities, including roles as general manager and vice president of finance. Defendants Ruth and Dr. William Evans formed Columbus Credit in 1980 along with Parrett and several other individuals. Columbus Credit was incorporated to perform billing, bookkeeping, collection and other administrative services for the Evans entities, including EMAI. In 1983, complete ownership of Columbus Credit passed to Parrett, who owned fifty-one shares, and Dr. William and Ruth Evans, who owned twenty-nine and twenty shares respectively.

In April 1986, Dr. Evans and EMAI initiated suit in the United States District for the Southern District of Ohio against Humana, Inc., and its subsidiary, Primary Medical Management, Inc. That complaint alleged various theories based on contract, intentional tort and federal statutory claims. The allegations arose out of a relationship between Dr. Evans and EMAI with Humana and Primary Medical Management, Inc., which commenced in 1983 and ended in 1985. The relationship was based upon a contract between EMAI and Primary Medical Management, Inc., under which EMAI would provide physician staffing to four free-standing emergency medical care centers in Pittsburgh with Primary Medical Management, Inc. providing the management and administration of all business functions. The complaint was filed on behalf of Dr. Evans and EMAI by attorney Gary D. Greenwald, a partner in the law firm of Schottenstein, Zox & Dunn. That firm had apparently provided legal services for a number of years to Dr. Evans and the Evans entities.

While the Humana litigation was pending in federal court, Greenwald left Schottenstein, Zox & Dunn in July 1988 and affiliated in an of-counsel position with the law firm of Szolosi & Fitch. Upon leaving his former partners, Greenwald contacted Dr. Evans by letter dated May 17, 1988, and requested written authorization to continue representing Dr. Evans in the Humana litigation. On June 9, 1988, Dr. Evans informed Greenwald that he saw no reason to transfer the Humana records to Greenwald, since Dr. Evans wanted

Schottenstein, Zox & Dunn to continue its involvement in the Humana litigation. Subsequently, in February 1989, one of the partners from the Schottenstein firm, Harvey Dunn, contacted Greenwald and requested that he accompany Dunn to a status conference in the Humana litigation scheduled for March 14, 1989. Prior to this conference, Dunn arranged for Greenwald to review a box of documents pertaining to a motion for summary judgment filed by Humana. Greenwald attended the status conference in March 1989, for which services Greenwald billed Dr. Evans. In September 1989, Greenwald mailed to Dunn a letter regarding the status of the court's decision on the motion for summary judgment in the Humana litigation.

On January 17, 1990, Greenwald sent another letter to Dunn regarding the failure of Dr. Evans to pay Greenwald's bill for services performed in 1989. On January 24, 1990, Greenwald sent another letter to Dunn indicating Greenwald's desire to dissociate himself from the Humana litigation. That letter was followed by another on January 30, 1990, which accompanied the return to Schottenstein, Zox & Dunn of the box of documents pertaining to the summary judgment motion filed in the Humana litigation. Also on that date, Greenwald filed with the federal district court his notice of withdrawal as counsel in the Humana litigation.

In the interim, Parrett had a falling out with Dr. Evans sometime in early 1989. As a result, the Evans entities notified Columbus Credit in July 1989 that all contracts for services, other than certain billing and collection services, performed by Columbus Credit were terminated. Plaintiffs thereafter initiated this suit on July 24, 1989, setting forth various claims for relief based on breach of contract and breach of fiduciary duty. Following the filing of defendants' answer and counterclaims, plaintiffs filed a motion to disqualify Schottenstein, Zox & Dunn from representing defendants due to a conflict of interest arising from that firm's prior representation of both Parrett and Columbus Credit. Ultimately, Schottenstein, Zox & Dunn withdrew as counsel for defendants and was replaced by the law firm of Szolosi & Fitch.

Greenwald, prior to filing of this suit, had terminated his relationship with Szolosi & Fitch in February 1989, forming his current firm of Schrim & Greenwald on March 1, 1989. Subsequent to the disqualification of Schottenstein, Zox & Dunn as counsel for defendants, plaintiffs retained Greenwald as their counsel on February 27, 1990, substituting Greenwald for the firm of Porter, Wright, Morris & Arthur.

Defendants, on March 1, 1990, moved the common pleas court to disqualify Greenwald as plaintiffs' counsel. The basis for defendants' motion requesting disqualification was an alleged conflict of interest arising from Greenwald's prior representation of defendants in the Humana litigation. Following

plaintiffs' response to defendants' motion to disqualify, the trial court conducted a hearing on March 27, 1990 regarding defendants' motion. The trial court rendered its decision on April 10, 1990, granting defendants' motion to disqualify Greenwald. The trial court premised the decision to disqualify Greenwald on the following: that Greenwald was still representing defendants in the Humana litigation; that even if Greenwald had terminated his relationship with defendants in the Humana litigation, a substantial relationship existed between the subject matter of this suit and the subject matter of the Humana litigation; and that Greenwald's continued representation of plaintiffs gave rise to an appearance of impropriety which would warrant disqualification in any event.

Plaintiffs now appeal and set forth the following three assignments of error:

"A. The trial court abused its discretion in disqualifying counsel for appellants on the ground that counsel for appellants was simultaneously representing clients with adverse interest.

"B. The trial court abused its discretion in disqualifying counsel for appellants on the ground that there was a substantial relationship between the representation of appellants' counsel in this action and his representation of some of the appellees in another action.

"C. The trial court abused its discretion in disqualifying counsel for appellants on the ground that counsel for appellants' continued representation of appellants created an appearance of impropriety."

Under the first assignment of error, plaintiffs contend that the trial court erroneously determined that Greenwald was still representing Dr. Evans and EMAI in the ongoing Humana litigation. It is plaintiffs' position that Dr. Evans terminated Greenwald's employment in the Humana litigation by refusing to turn over records concerning that litigation upon Greenwald's request and that Greenwald's assistance with the summary judgment motion filed in the Humana litigation occurred at the request of Schottenstein, Zox & Dunn rather than at the request of Dr. Evans. Plaintiffs conclude that the sole reason Dr. Evans now claims Greenwald is still his attorney in the Humana litigation is merely to obtain a strategic advantage in this litigation.

It is well established that trial courts wield wide discretionary power in supervising the practice of law in those courts. The authority possessed by a common pleas court includes the duty to oversee the ethical performance of the attorney-client relationship. This power is in addition to the exclusive power of the Supreme Court to discipline attorneys for violations of the Code of Professional Responsibility. *Royal Indemn. Co. v. J.C. Penney Co.* (1986),

27 Ohio St.3d 31, 34–35, 27 OBR 447, 449–450, 501 N.E.2d 617, 620–621; accord *Mentor Lagoons, Inc. v. Rubin* (1987), 31 Ohio St.3d 256, 259–260, 31 OBR 459, 461–463, 510 N.E.2d 379, 381–382, and *Maple Hts. v. Redi Car Wash* (1988), 51 Ohio App.3d 60, 61, 554 N.E.2d 929, 930–931. Among the factors a trial court may consider in assessing the ethical performance of counsel appearing before it are the ethical considerations set forth in the Code of Professional Responsibility. See, *e.g., State v. Ross* (1973), 36 Ohio App.2d 185, 193–196, 65 O.O.2d 316, 321–323, 304 N.E.2d 396, 402–404, appeal dismissed (1974), 415 U.S. 904, 94 S.Ct. 1397, 39 L.Ed.2d 461.

Pertinent to plaintiffs' initial assignment of error, Canon 5 of the Code of Professional Responsibility prohibits an attorney from representing multiple clients where the representation of one may impair the attorney's representation of another client with adverse interests. See DR 5–105.

Although plaintiffs do not dispute these general principles, they contend that Dr. Evans terminated Greenwald's employment in the Humana litigation as a matter of fact. Generally, the attorney-client relationship is consensual, subject to termination by acts of either party. See *Brown v. Johnstone* (1982), 5 Ohio App.3d 165, 166–167, 5 OBR 347, 348–350, 450 N.E.2d 693, 694–696. A client may terminate the relationship at any time. *Ross v. Woyan* (1980), 1 Ohio App.3d 39, 41, 1 OBR 3, 5–6, 439 N.E.2d 428, 430. However, an attorney is not free to withdraw from the relationship absent notice to his client and, if required by the rules of court where the attorney is representing the client, permission from the court. DR 2–110(A). The point at which the relationship is terminated is a factual question to be resolved by the trier of fact. *Muir v. Hadler Real Estate Mgt. Co.* (1982), 4 Ohio App.3d 89, 90–92, 4 OBR 170, 171–173, 446 N.E.2d 820, 822–824.

The trial court, in concluding that Greenwald was simultaneously representing clients with adverse interests, stated that:

"Although, in actuality, Greenwald may be providing absolutely no representation in the *Humana* case, this Court must view him as technically remaining counsel of record. Therefore, until a federal court order of substitution is entered, Greenwald's representation in the instant case must be treated as against an existing client."

It is apparent from the above entry that the trial court premised its determination that Greenwald was simultaneously representing both plaintiff and defendant solely on the fact that the Southern District Court had never ordered substitution of counsel in the Humana litigation pursuant to Southern District Court. Loc.R. 3.0.5(2).

■ It is plaintiffs' position under their first assignment of error that compliance with the federal district court local rule regarding withdrawal of counsel was unnecessary because Dr. Evans had terminated Greenwald's representation in the Humana litigation by refusing to allow Greenwald to retain the files upon leaving Schottenstein, Zox & Dunn. However, there was evidence before the trial court that Greenwald continued to represent Dr. Evans in the Humana litigation subsequent to his departure from his former firm. Specifically, Greenwald participated in the hearing on the motion for summary judgment filed in the Humana litigation and mailed Dr. Evans a letter regarding the status of the decision on the summary judgment motion in September 1989. Greenwald also notified Schottenstein, Zox & Dunn on January 17, 1990, that Evans had not yet paid Greenwald's fees associated with the 1989 hearing in the Humana litigation. These facts are sufficient to support the trial court's determination that Greenwald was continuing to represent Dr. Evans in the Humana litigation.

Plaintiffs also assert under their first assignment of error that the trial court also erred in determining that Greenwald failed to obtain federal district court authorization for his withdrawal from the Humana litigation. Because Greenwald obtained from the Southern District Court a *nunc pro tunc* entry on April 16, 1990 authorizing his withdrawal from the Humana litigation effective January 30, 1990, plaintiffs conclude that Greenwald had withdrawn as counsel when the trial court rendered its decision.

This court observes that plaintiffs filed the *nunc pro tunc* entry with the common pleas court on April 20, 1990, by way of a "motion for reconsideration" that was filed one day subsequent to the date the trial court journalized its order disqualifying Greenwald. It is also important to note that the *nunc pro tunc* entry was filed in the federal district court five days subsequent to the trial court's April 10 decision specifying Greenwald's failure to comply with Southern District Court Loc.R. 3.0.5(2) as the basis for its determination that Greenwald was still representing Dr. Evans and EMAI in the Humana litigation. Clearly, at the time the trial court rendered its decision, Greenwald had not yet complied with the federal district court rule regarding withdrawal of counsel. Moreover, plaintiffs' motion to reconsider the April 10, 1990 decision was filed after the final order was entered disqualifying Greenwald on April 19, 1990. It is that judgment from which plaintiffs have taken this appeal.

■ Since a motion for reconsideration filed subsequent to the journalizing of a final appealable order is a nullity, *Pitts v. Ohio Dept. of Transp.* (1981), 67 Ohio St.2d 378, 21 O.O.3d 238, 423 N.E.2d 1105, any attempt by plaintiffs to have this court decide this issue on the basis of material which

was not part of the record before the trial court in making the judgment from which the appeal is taken would be improper. *State v. Ishmail* (1978), 54 Ohio St.2d 402, 8 O.O.3d 405, 377 N.E.2d 500. Accordingly, on the basis of the record which is properly before this court regarding plaintiffs' appeal from the April 19, 1990 judgment disqualifying Greenwald, the trial court did not err in finding that Greenwald's failure to comply with Southern District Court Loc.R. 3.0.5(2) rendered his attempted withdrawal from the Humana litigation ineffective. See DR 2–110(A)(1). The first assignment of error is overruled.

Plaintiffs maintain under their second assignment of error that the trial court also erred in concluding that disqualification was appropriate even if Greenwald had terminated his relationship with defendants, because of the similarity between this litigation and the Humana litigation. It is plaintiffs' position that the trial court's finding of a substantial relationship between the two suits was premised on an erroneous definition of "substantial relationship." Plaintiffs contend that the standard applied by the trial court is based on a broad definition of "substantial relationship" which looks to the similarity of issues and factual contexts of the prior representation and the current representation. Plaintiffs maintain that the correct standard is more narrow and requires a finding that the issues being litigated in this suit are identical to the issues litigated in the prior litigation. Because the Humana litigation involves conduct during the period 1983 through 1985, while this suit concerns conduct taking place in early 1989, plaintiffs contend that no identity of issues can exist. Accordingly, plaintiffs conclude that under the more restrictive definition of "substantial relationship," Greenwald's representation of Dr. Evans and EMAI in the Humana litigation did not concern issues identical to those raised in this suit.

In rendering its decision, the trial court adopted the substantial-relationship test supposedly set forth in *In re Dayco Corp.* (S.D.Ohio 1984), 102 F.R.D. 624. In applying that standard to the facts adduced during the hearing, the trial court concluded that there " * * * is a possibility or appearance of the possibility that Attorney Greenwald may have received confidential information while working in close relationship with Attorney Dunn in the *Humana* case. Indeed, these are the very fears Dr. Evans expressed by affidavit. The Court believes that the factual context of Greenwald's prior representation and the factual context of the present case create a relationship substantial enough to justify disqualification."

Upon review of the decision rendered in *Dayco*, this court concludes that the trial court erred in citing *Dayco* as persuasive precedent establishing the parameters of the substantial-relationship test utilized by courts in disqualification proceedings. More to the point, although the *Dayco* court reviewed the

competing tests which have arisen under the substantial-relationship standard, it did not adopt or apply either test. Rather, the court decided the motion on the basis that the prior representation was not adverse to the present representation. *Id.* at 628–629. Accordingly, the decision in *Dayco* is of no utility in ascertaining the parameters of the substantial-relationship test.

Despite this court's conclusion regarding *Dayco*, the trial court did correctly ascertain that two competing views exist as to the meaning of the substantial-relationship test. Initially, it is important to observe the important policies which underlie the development of the substantial-relationship test. Those policies include a desire to promote fundamental fairness in any proceeding by prohibiting an attorney from using an informational advantage gained in the course of a former representation, the desire to promote client disclosure of all pertinent information to an attorney by fostering trust that confidential information will not be subsequently disclosed, and the desire to promote confidence in the integrity of the judicial system. See, generally, Note, Developments in the Law—Conflicts of Interests in the Legal Profession (1981), 94 Harv.L.Rev. 1244, 1315–1321, and *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (C.A.5, 1981), 646 F.2d 1020, 1027, certiorari denied (1981), 454 U.S. 895, 102 S.Ct. 394, 70 L.Ed.2d 211.

The courts of this state have likewise focused on these considerations as support for the authority of the trial court to disqualify an attorney appearing before it. See *Royal Indemn. Co., supra,* 27 Ohio St.3d at 33–34, 27 OBR at 448–450, 501 N.E.2d at 619–620 (integrity of proceedings before it), and *Ussury v. St. Joseph Hosp.* (1988), 43 Ohio App.3d 48, 49, 539 N.E.2d 700, 701 (unfair prejudice). The expansion or contraction of the substantial-relationship test depends, to a great extent, upon the importance a court gives to any one policy consideration underlying the power to disqualify counsel. Courts which accord more importance to preserving the integrity of the court system or the free flow of information between an attorney and client have adopted a broad standard for measuring the substantiality of the relationship between present and former representations. See, *e.g., Trone v. Smith* (C.A.9, 1980), 621 F.2d 994, 998. Conversely, courts which take a more restrictive view of the substantial-relationship test—requiring an identity of issues—tend to focus more on the potential prejudice a former client may suffer from the attorney's current representation of a client with adverse interest. See, *e.g., Government of India v. Cook Industries, Inc.* (C.A.2, 1978), 569 F.2d 737, 739–740. Accordingly, our review of the propriety of the test utilized by the trial court in this case turns upon the identification of which policy consideration is most prominent in this state's attorney-disqualification cases.

■ We conclude that the trial court applied the appropriate definition of "substantial relationship" to the facts of this case. We premise this conclusion on the decision in *Royal Indemn. Co., supra,* in which the Supreme Court stated:

"Appellants next contend that a trial court may only disqualify an attorney from continued participation in ongoing litigation where that attorney's continued participation might unfairly affect the outcome of the litigation. This contention too narrowly restricts the inherent power of the court to protect the integrity of its proceedings. The most common basis for trial court disqualification of an attorney is the risk of a tainted trial due to an actual or potential conflict of interest. * * * However, this is not the only ground for disqualification. The trial court's power to protect its pending proceedings includes the authority to dismiss an attorney who cannot, or will not, take part in them with a reasonable degree of propriety. * * * Similarly, attorney disqualification can be warranted in cases of truly egregious misconduct which is likely to infect future proceedings." (Citations omitted.) *Id.,* 27 Ohio St.3d at 34, 27 OBR at 449–450, 501 N.E.2d at 620.

This court finds this statement by the Supreme Court and the similar holding in *Mentor Lagoons Inc., supra,* to indicate that court's conclusion that trial courts possess broad powers in attorney-disqualification matters so as to maintain the integrity of the judicial system. Given this policy as the focus for attorney-disqualification proceedings, the proper standard to be applied under the substantial-relationship test is whether "the factual contexts of the two representations are similar or related." *Trone, supra,* 621 F.2d at 998.

■ While this court recognizes that the more restrictive view of the substantial-relationship test would appear more appropriate in state court proceedings where a separate judicial body is charged with overseeing the professional conduct of attorneys practicing in that state, the Supreme Court has specifically stated that the exercise by trial courts of their broad discretionary power to disqualify attorneys on ethical grounds does not conflict with the plenary power of the Supreme Court to discipline attorneys under the Code of Professional Responsibility. *Mentor Lagoons, Inc., supra,* 31 Ohio St.3d at 260, 31 OBR at 462–463, 510 N.E.2d at 382. In light of the foregoing, the trial court did not err in its formulation of a substantial-relationship test. Since plaintiffs do not challenge the application of the broader test to the facts of this case, but challenge only the use of that test as opposed to the more restrictive test, no further error is extant. The second assignment of error is overruled.

Finally, plaintiffs contend by way of their third assignment of error that the trial court erroneously determined that Greenwald's representation of plaintiffs created an appearance of impropriety. Plaintiffs' contention is premised upon this court's finding in their favor under either the first or second assignments of error. However, since this court has overruled both the first and second assignments of error, we find no merit to plaintiffs' argument under their third assignment of error. Accordingly, it is overruled.

Having overruled all three assignments of error, we affirm the judgment of the common pleas court.

*Judgment affirmed.*

WHITESIDE and STRAUSBAUGH, JJ., concur.

DEAN STRAUSBAUGH, J., retired, of the Tenth Appellate District, sitting and determining the appeal prior to retirement.

DONALD A. COX, J., of the Gallia County Common Pleas Court, sitting by assignment.