OPINION
Plaintiff-appellant, Al Burzynski, administrator of the Estate of Alfred Halevan, appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment to defendants-appellees, Bradley 
Farris Co., L.P.A., and Mark M. Nesbit, on the grounds that plaintiff's complaint was not timely filed. Because the trial court properly determined plaintiff's complaint was not timely filed under the applicable statute of limitations, we affirm.
In the spring of 1997, plaintiff consulted with defendant Mark M. Nesbit, who at that time worked for defendant law firm Bradley Farris Co., L.P.A. ("the law firm"), regarding three administrative claims plaintiff had filed in propria persona with the United States Department of Defense Finance and Accounting Service ("DFAS"), a federal agency where plaintiff had been employed from 1989 until his retirement in October 1996. Plaintiff claimed the DFAS had engaged in employment discrimination against him, including age and sex discrimination and constructive discharge. In May 1997, Nesbit, on behalf of the law firm, sent a letter to the Department of Defense advising that the law firm represented plaintiff on all of his pending discrimination claims. In August 1997, plaintiff signed an agreement retaining defendants as counsel on at least one of his claims against the DFAS. For purposes of our review in this case, we, like the trial court, will presume defendants represented plaintiff on all three claims.
Plaintiff filed the first administrative claim with the DFAS in August 1994. The DFAS issued its final decision in April 1996, denying plaintiff's claim. Plaintiff pursued an appeal from that decision to the Equal Employment Opportunity Commission ("EEOC"). On March 12, 1998, the EEOC affirmed the decision of the DFAS.
Plaintiff filed the second administrative claim with the DFAS in April 1996. On April 16, 1997, the DFAS issued a final decision denying plaintiff's claim; plaintiff did not file an administrative appeal from that decision.
In September 1997, the DFAS issued an agency decision finding no discrimination on a constructive discharge claim plaintiff filed in February 1997, plaintiff's third administrative claim. On behalf of plaintiff, defendants timely appealed the agency decision to the federal Merit Systems Protection Board ("the board"). On November 25, 1997, the board issued its initial decision dismissing plaintiff's appeal to the board. In the initial decision, the board provided the following "Notice to Appellant":
 This initial decision will become final on December 30, 1997, unless a petition for review is filed by that date or the Board reopens the case on its own motion. This is an important date because it is usually the last day on which you can file a petition for review with the Board. However, if this initial decision is received by you more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision. The date on which the initial decision becomes final also controls when you can file a petition for review with the Court of Appeals for the Federal Circuit. * * *
* * *
 If you are dissatisfied with the Board's final decision, you may file a petition with: The United States Court of Appeals * * * . You may not file your petition with the court before this decision becomes final. To be timely, your petition must be received by the court no later than 30 calendar days after the date this initial decision becomes final.
Therefore, pursuant to the notice provided in the board's decision, plaintiff had to file a petition for review with the federal court of appeals no later than thirty days after the date the decision became final, December 30, 1997. Accordingly, plaintiff had until January 29, 1998 to file a petition in the federal court of appeals.
Defendants received the board's decision on December 1, 1997. On December 2, 1997, Nesbit mailed plaintiff a copy of the board's decision, informed plaintiff the board denied plaintiff's appeal, and advised plaintiff to let Nesbit "know as soon as possible" whether plaintiff wished to appeal the decision because he had "to appeal by December 25, 1997 or we lose any right to appeal." (Dec. 2, 1997 letter.) On December 15, 1997, Nesbit wrote plaintiff a letter indicating he and the law firm would no longer represent plaintiff. The letter further advised plaintiff, in pertinent part:
 If you still wish to pursue this legal matter or make a claim against any other party, you should be aware that the passage of time may bar you from doing so. Since time is always important in legal matters and could be critically short in your case, if you decide to contact another law firm about this matter, I recommend you do so immediately.
Plaintiff does not dispute that immediately after being informed the law firm would no longer represent him and receiving return of his retainer, he retrieved his entire file from the law firm. Plaintiff retained new counsel in February 1998, who filed a complaint on plaintiff's behalf on March 30, 1998 in federal district court against the Secretary of Defense. The complaint contained three counts, one for each of the three administrative claims plaintiff filed against the DFAS that had been denied and for which defendants had represented plaintiff.
In his answer filed on July 10, 1998 to plaintiff's complaint, the Secretary of Defense asserted the statute of limitations as an affirmative defense to plaintiff's claims. On May 12, 1999, the Secretary of Defense filed a motion to dismiss two of the three discrimination claims, asserting plaintiff's claims were time-barred by the applicable statute of limitations because plaintiff had not complied with the time limits for filing his claims in federal court after the administrative decisions became final.
In an opinion and order issued August 18, 1999, the federal district court found plaintiff was not precluded from pursuing his first claim, but the two remaining claims were time-barred. The court noted that under Section 1295(a)(9), Title 28, U.S. Code, the federal court of appeals normally has jurisdiction to hear appeals from final orders of the board in federal personnel matters, but that a civil action can be filed in the federal district court under Section 7703(b)(2), Title 5, U.S. Code in "mixed cases" involving both discrimination and other claims. Concluding plaintiff's claims "arguably" were properly in the federal district court as involving "mixed" claims, the court found plaintiff was not precluded from pursuing his first claim because plaintiff filed his complaint in federal district court within thirty days of the March 12, 1998 EEOC decision affirming the agency decision of the DFAS. The federal district court, however, concluded plaintiff's second and third claims were time-barred. As to the third claim, the court noted that pursuant to Section 7702(a)(3), Title 5, U.S. Code, the decision of the board was a judicially reviewable action as of the date of the issuance of the decision, and under Section 7703(b)(2), Title 5, U.S. Code, the case had to be filed with the federal court within thirty days after the date the individual filing the case received notice of the judicially reviewable action. The federal district court noted that because the board issued its decision on November 25, 1997, plaintiff had thirty days from that date to file a civil action in the federal district court. The court concluded plaintiff's third claim was time-barred because it was not filed in the federal district court until March 30, 1998, beyond the thirty-day time period.
On September 21, 1999, plaintiff filed the present action, asserting claims of legal malpractice against defendants arising out of the federal court's dismissal of plaintiff's second and third discrimination claims as time-barred. In June 2000, defendants moved for summary judgment, asserting (1) they did not breach a duty to plaintiff, and (2) plaintiff's claims of legal malpractice were barred by the one-year statute of limitations in R.C. 2305.11(A). The trial court granted defendants' motion, finding plaintiff knew or should have known of the possibility of a statute of limitations problem on plaintiff's underlying claims in federal court no later than July 10, 1998, when the Secretary of Defense raised the statute of limitations as an affirmative defense in his answer to plaintiff's complaint. The trial court concluded plaintiff's legal malpractice action against defendants is time-barred because plaintiff did not file his legal malpractice action against defendants until September 21, 1999, more than a year after his legal malpractice claim accrued and two months after the one-year statute of limitations had expired. Plaintiff appeals, assigning a single error:
 PURSUANT TO THE DOCTRINE OF STARE DECISIS, THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT BECAUSE THE STATUTE OF LIMITATIONS BEGIN [sic] TO RUN WHEN THE SECRETARY OF DEFENSE, IN THE UNDERLYING ACTION, FILED HIS MOTION TO DISMISS ALLEGING A STATUTE OF LIMITATIONS DEFENSE, RATHER THAN WHEN THE SECRETARY FILED HIS ANSWER.
Summary judgment shall not be rendered unless the moving party demonstrates that (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, with the non-moving party being entitled to have the evidence construed most strongly in its favor. Civ.R. 56(C); State ex rel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183. Appellate review of summary judgment motions is de novo. Motorists Mut. Ins. Co. v. Natl. Dairy Herd Improvement Assn., Inc. (2001), 141 Ohio App.3d 269,275. Accordingly, we stand in the shoes of the trial court and conduct an independent review of the record.
Plaintiff asserts the one-year statute of limitations did not begin to run when the Secretary of Defense filed his July 10, 1998 answer raising the statute of limitations as an affirmative defense. Instead, plaintiff contends his legal malpractice action is timely because, he argues, the statute of limitations did not begin to run until the Secretary of Defense filed his motion on May 12, 1999 to dismiss the underlying case as untimely filed, less than a year before plaintiff filed this legal malpractice action in September 1999.
A claim of legal malpractice must be filed within one year of the time the cause of action accrues. R.C. 2305.11(A). A claim for legal malpractice accrues when "there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later." Zimmie v. Calfe, Halter Griswold (1989), 43 Ohio St.3d 54, syllabus, citing Omni-Food 
Fashion, Inc. v. Smith (1988), 38 Ohio St.3d 385. A cognizable event is an event sufficient to alert a reasonable person that a questionable legal practice may have occurred. Zimmie, at 58; DiSabato v. Tyack 
Assoc. Co., L.P.A. (Sept. 14, 1999), Franklin App. No. 98AP-1282, unreported. The "cognizable event" puts the plaintiff on notice to investigate the facts and circumstances relevant to his or her claim in order to pursue remedies. Flowers v. Walker (1992), 63 Ohio St.3d 546,549. As this court has noted, "[t]he focus should be on what the client was aware of and not an extrinsic judicial determination." McDade v. Spencer (1991), 75 Ohio App.3d 639, 643. Determination of the date a cause of action for legal malpractice accrues is a question of law reviewed de novo by this court. Whitaker v. Kear (1997), 123 Ohio App.3d 413, 420.
"Generally, the attorney-client relationship is consensual, subject to termination by acts of either party." Columbus Credit Co. v. Evans (1992), 82 Ohio App.3d 798, 804. "`Conduct which dissolves the essential mutual confidence between attorney and client'" signifies the end of the attorney-client relationship. DiSabato, supra, citing Brown v. Johnstone (1982), 5 Ohio App.3d 165, 166-167. Such conduct includes a letter notifying a client that the attorney-client relationship has been terminated, or the client retaining another attorney to file a suit regarding the same subject matter for which the client had retained previous counsel. DiSabato, supra, citing Flynt v. Brownfield, Bowen 
Bally (C.A.6, 1989), 882 F.2d 1048, and Brown, supra. See, also, Wozniak v. Tonidandel (1997), 121 Ohio App.3d 221, 226 (a letter from an attorney to a client can terminate the attorney-client relationship).
When viewed in a light most favorable to plaintiff, the facts reflect the attorney-client relationship between plaintiff and defendants arguably ended in December 1997, when defendants notified plaintiff they would no longer represent him and recommended he contact another law firm immediately if he wished to pursue his claims, and in response, plaintiff shortly thereafter picked up his file. The attorney-client relationship unquestionably ended at least by February 1998, when plaintiff retained new counsel who filed a lawsuit in federal court concerning the same matters for which defendants had represented plaintiff. If the date of the termination of the attorney-client relationship is the date which triggers the running of the statute of limitations, then plaintiff's legal malpractice action against defendants is time-barred, using either December 1997 or February 1998, because plaintiff's legal malpractice action was filed more than one year after either date.
Therefore, under the "discovery rule" in Zimmie, we must determine if there is a later "cognizable event" whereby plaintiff first discovered or should have discovered defendants' alleged legal malpractice such that his legal malpractice action against defendants is not time-barred. For purposes of the accrual of the statute of limitations, plaintiff's "injury" is defined in terms of notice, Spencer v. McGill (1993),87 Ohio App.3d 267, 278, and the analysis is a factual one. DiSabato, supra, citing Zimmie, supra, at 58-59, and Hershberger v. Akron City Hosp. (1987), 34 Ohio St.3d 1, 4. The focus is on what the plaintiff knew or should have known, and certainty or a judicial determination as to the validity of the statute of limitations defense is not necessary. McDade, supra, at 643; DiSabato, supra.
The cognizable event, whereby plaintiff either knew or should have known that defendants may have committed legal malpractice resulting in plaintiff's federal claims being barred by the statute of limitations, occurred no later than July 10, 1998, when the Secretary of Defense filed his answer to plaintiff's federal court complaint and raised the statute of limitations as an affirmative defense. By July 10, 1998: (1) plaintiff was given express notice in the initial decision issued by the board on November 25, 1997, and in letters defendants sent to plaintiff on December 2 and 15, 1997, that the board's decision would become final the end of December, and not subject to review in the federal court of appeals after the end of January; (2) plaintiff was notified in defendants' letter to him on December 15, 1997, that defendants would no longer represent plaintiff and would not file appeals or otherwise pursue plaintiff's claims; (3) plaintiff knew when he hired new counsel in February 1998 that defendants had not pursued or appealed his claims between December 15, 1997 and February 1998; (4) plaintiff was on notice when he filed his complaint in federal district court on March 30, 1998, that the claims on which his complaint were based had become final and were no longer subject to review; and (5) plaintiff, though his new counsel, knew the Secretary of Defense was asserting in a signed pleading filed with the federal court that plaintiff's claims were time-barred by the statute of limitations.
As a result, at the time the Secretary of Defense filed his answer raising the statute of limitations as an affirmative defense, plaintiff was already on notice from the DFAS and plaintiff's former counsel, that at least one of plaintiff's claims, the last of the three determined, would be time-barred if not filed by the end of January 1998. The Secretary of Defense's answer formally asserting the statute of limitations defense, in a signed pleading, should have put plaintiff on formal notice (1) to investigate whether plaintiff's claims were in fact time-barred because of defendants' failure to appeal or otherwise preserve plaintiff's claims, and (2) to alert plaintiff of the need to investigate possible malpractice claims against defendants. Zimmie, supra; DiSabato, supra; Flowers, supra.
Moreover, it was entirely proper for the Secretary of Defense to first raise the statute of limitations defense in his answer, rather than by motion, to alert plaintiff that his action might be time-barred. A statute of limitations defense can be raised either by motion before pleading pursuant to Fed.R.Civ.P. 12(b) if the face of the complaint reveals the action is time-barred, or as an affirmative defense in an answer pursuant to Fed.R.Civ.P. 8(c).
Plaintiff suggests an answer should not serve as a cognizable event in a legal malpractice action because "[a]s a practical matter, prudent defense counsel raise all possible defenses in an answer," regardless of their merit, to avoid waiver of a possible defense that has not been raised. (Plaintiff's Brief, 6.) Contrary to plaintiff's suggestion, when an attorney sets forth the statute of limitations as an affirmative defense in a signed pleading, the attorney certifies, in essence, there is good ground to support the defenses. Fed.R.Civ.P. 11. If an attorney does not have a good faith basis for asserting a defense, the attorney faces possible sanctions. Id.
Here, the statute of limitations defense is a valid defense, and plaintiff's underlying claims were ultimately dismissed for that reason. Compare Vagianos v. Halpern (Dec. 14, 2000), Cuyahoga App. No. 76408, unreported (holding an answer asserting res judicata as a possible defense does not constitute a cognizable event to trigger the running of the statute of limitations where the defendant asserting the defense does not contend the defense is valid and there is no adverse ruling on the basis of res judicata). Given the clear validity of the affirmative defense of the statute of limitations, coupled with the prior express notice to plaintiff that at least one of his claims, the latest to be decided, would become final and nonreviewable if not appealed or pursued by the end of January 1998, plaintiff, through his new counsel, had a duty at least as of July 10, 1998 to investigate the viability of the statute of limitations defense when it was formally raised on that date in a pleading and to investigate and pursue remedies for potential legal malpractice against defendants with regard to their representation on plaintiff's underlying claims.
The clear validity of the statute of limitations defense, coupled with the other prior express notices to plaintiff of a potential statute of limitations problem, distinguish this case from other cases where an answer has been found to be insufficient to constitute a cognizable event to trigger the running of the statute of limitations. See and compare Vagianos, supra; Johnson v. Garretson (Aug. 17, 1992), Butler App. No. CA92-01-001 (answer insufficient where it provides merely an inconclusive suggestion of potential problems and does not alert plaintiff of the need to investigate possible malpractice claims). Although the courts in Vagianos and Johnson found an answer to be insufficient under the facts of those cases, the courts did not issue blanket holdings that an answer cannot constitute a cognizable event sufficient to trigger the statute of limitations in appropriate circumstances.
Plaintiff nevertheless maintains that under the doctrine of stare decisis, a motion is the earliest "cognizable event" that is sufficient to put a plaintiff on notice of a potential malpractice claim. Under the doctrine of stare decisis, "a determination of a point of law by a court of last resort will be followed by inferior courts in subsequent cases presenting the same legal problem, even though different parties are involved in the subsequent case." Nelson v. Ohio Supreme Court (Oct. 6, 1994), Franklin App. No. 94APE05-624, unreported, citing Battig v. Forshey (1982), 7 Ohio App.3d 72. We are unaware of any case, and plaintiff points to none, that squarely holds that an answer cannot serve as the "cognizable event" which triggers the running of the statute of limitations. The cases plaintiff relies on simply do not address that precise issue. See Zimmie, supra; Whitaker, supra; McDade, supra; DiSabato, supra. Accordingly, the issue before this court is not decided on the basis of stare decisis but, instead, is decided by a factual analysis of what plaintiff knew or should have known relevant to his potential claim for legal practice. Zimmie, supra; Spencer, supra; McDade, supra; DiSabato, supra.
Based on the foregoing and the absence of disputed material facts, the July 10, 1998 answer of the Secretary of Defense raising the statute of limitations as an affirmative defense in plaintiff's underlying federal action, coupled with the prior notices to plaintiff, was a cognizable event sufficient to alert plaintiff and put him on notice to investigate whether a questionable legal practice of defendants may have resulted in plaintiff's claims being time-barred by the statute of limitations. Zimmie, supra; DiSabato, supra. Because plaintiff's complaint for legal malpractice was filed on September 21, 1999, more than two months after the one-year statute of limitations had run on July 10, 1999, plaintiff's legal malpractice action is barred by the statute of limitations. R.C.2305.11(A).
Accordingly, plaintiff's assignment of error is overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
BROWN and PETREE, JJ., concur.