HENRY FILTERS, INC., Appellant,

v.

PEABODY BARNES, INC., Appellee.

[Cite as *Henry Filters, Inc. v. Peabody Barnes, Inc.* (1992), 82 Ohio App.3d 255.]

Court of Appeals of Ohio,
Wood County.

No. 91WD114.

Decided Sept. 4, 1992.

*Drew A. Hanna,* for appellant.

*Thomas W. Mack, Martin Kimel* and *Daniel T. Spitler,* for appellee.

SHERCK, Judge.

This is an appeal from the order of the Wood County Court of Common Pleas disqualifying the law firm of Brooks and Kushman from representing appellant, Henry Filters, Inc. Because we find that substantial evidence supports the conclusion that appellant's attorneys, Brooks and Kushman, had an existing attorney-client relationship with appellee when this litigation commenced, we affirm the order of the trial court.

Appellee, Peabody Barnes, Inc., f.k.a. Barnes Pump, is in the business of supplying motors and pumps for various uses. Appellant, Henry Filters, Inc., is in the business of manufacturing machine tool coolant filtration and recovery systems which employ pumps and motors such as those supplied by appellee. In May 1988, appellant's president, Stephen McEwen, began discussions with appellee's chief engineer concerning the possibility of the companies' entering into a project for the purpose of developing a unique pump to be known as the "Henry pump." In September 1988, appellant ordered from appellee a prototype of the submersible seventy-five horsepower motor to be used in the Henry pump.

In November 1988, appellant and appellee tested the Henry pump prototype. The prototype incorporated the motor produced by appellee. In the course of the testing, engineers from appellant and appellee discovered that a certain bearing arrangement resulted in improved motor cooling. Both parties felt that the improvement was significant; as a result, the companies decided to seek a joint patent on the improved design.

Appellant and appellee decided to work together in the preparation and prosecution of the joint patent application. The parties agreed that appellant's counsel, Brooks and Kushman, would prepare and prosecute the application. Appellee agreed to reimburse appellant one half the cost of seeking the patent.

During the contractual negotiations which took place concerning the sharing of the invention's benefits, each party was represented by separate counsel; appellant was represented by Brooks and Kushman, while appellee was represented by other counsel.

In the course of the preparation of the patent application, an attorney from Brooks and Kushman consulted with engineers from both appellant and appellee. Among the various documents associated with the patent application was a declaration form prepared by Brooks and Kushman. That document, signed by both parties, included the statement: "I hereby appoint the following attorney(s) and/or agents to prosecute this application and to transact all business in the Patent and Trademark Office connected there-

with." That clause then listed members of the firm of Brooks and Kushman. Thus, appellee, on a form supplied by Brooks and Kushman, expressly appointed Brooks and Kushman as its attorney to prosecute the patent application.

During the preparation of the patent application, employees of appellee gave extensive information to Brooks and Kushman that appellee considered confidential. Appellee's engineer was later to testify that, at the time and although it was not discussed, he had no objection to sharing the information with appellant. It is clear, however, that appellee expected that Brooks and Kushman would not use the information to appellee's detriment.

In January 1991, Brooks and Kushman abandoned the patent application after the Patent Office determined that the application contained nothing new or patentable. However, Brooks and Kushman never notified appellee that the application was no longer being pursued.

The present lawsuit commenced three months prior to Brooks and Kushman's abandonment of the patent application. On September 28, 1990, appellant filed suit against appellee, alleging that the motors and pump assemblies sold by appellee to appellant were defective goods. The alleged defective goods incorporated the devices that were described in the patent application.

On May 13, 1991, appellee filed its motion to disqualify appellant's counsel, Brooks and Kushman. Appellant opposed the motion. The trial court, Judge Donald DeCessna, heard oral arguments and ordered additional briefing. Shortly thereafter, Judge DeCessna recused himself from the case due to a potential conflict of interest, and Judge Randall L. Basinger assumed responsibility for the litigation.

At a pretrial conference, Judge Basinger invited even more briefing of the issues. The parties declined, indicating that the motion was ripe for decision. Accordingly, on October 29, 1991, the trial court made extensive findings of fact and granted the motion to disqualify Brooks and Kushman. Appellant filed this timely appeal, asserting the following sole assignment of error:

"The court erred in granting defendants' motion for disqualification of the law firm of Brooks & Kushman because (i) there was no attorney-client relationship between defendant and Brooks & Kushman, and (ii) by defendants' own admission, the information disclosed to Brooks & Kushman by defendants was never intended to be kept confidential from Henry."

■ Disqualification of a lawyer is a serious matter. The right of a litigant to select counsel of choice should be limited only when representation poses a significant risk of a violation of the Canons of the Code of Professional Responsibility. *Mentor Lagoons, Inc. v. Rubin* (1987), 31 Ohio St.3d 256,

259–260, 31 OBR 459, 461–463, 510 N.E.2d 379, 381–382. The Disciplinary Rule which is pertinent to this matter is DR 5–105, which states:

"(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5–105(C).

"(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5–105(C).

"(C) In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

"(D) If a lawyer is required to decline employment or to withdraw from employment under DR 5–105, no partner or associate of his or his firm may accept or continue such employment."

Generally, the decision of the trial court to disqualify an attorney based on a conflict of interest will be sustained absent an abuse of discretion. *Sarbey v. Natl. City Bank, Akron* (1990), 66 Ohio App.3d 18, 583 N.E.2d 392. We note at the outset that a motion to disqualify an attorney gives rise to two areas of examination: (1) the nature of the relationship between the litigants; and (2) the nature of the relationship between the attorney's past and present duties, as those duties relate to the litigants. The court must first scrutinize the relationship that existed between the moving party and the attorney that the moving party seeks to disqualify. If there is no current or past attorney-client relationship, then the motion should be denied. On the other hand, if the court determines that there is, or has been, an attorney-client relationship, then the court must inquire into the relationship between the current representation and the representation giving rise to the attorney-client relationship between the lawyer and the litigant. *Sarbey v. Natl. City Bank, Akron, supra.*

The primary thrust of appellant's argument attacks the finding of the trial court that the work performed by Brooks and Kushman on the patent application gave rise to an attorney-client relationship between appellant and Brooks and Kushman. Contrary to appellant's position, the fact that appellee did not directly pay the fees of Brooks and Kushman is not dispositive. *Westinghouse Elec. Corp. v. Kerr–McGee Corp.* (C.A.7, 1978), 580 F.2d 1311,

1317, certiorari denied (1978), 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346. Likewise, the fact that one putative joint client did not intend that information be kept from the other client does not negate the existence of the attorney-client relationship. The ethical limitation on conflicts of interest is broader than the evidentiary privilege concerning communications between client and lawyer: "This ethical precept [concerning conflicts], unlike the evidentiary privilege, exists without regard to the nature or source of the information, or the fact that others share the knowledge." EC 4–4; *Brennan's, Inc. v. Brennan's Restaurants, Inc.* (C.A.5, 1979), 590 F.2d 168, 172.

 The determination of the existence of an attorney-client relationship will not be reversed when that determination is supported by substantial evidence. *Jackson v. Johnson* (1992), 5 Cal.App.4th 1350, 7 Cal.Rptr.2d 482; *In re Thorup* (D.C.App.1983), 461 A.2d 1018, 1019. The type of evidence necessary to support the determination can vary with the circumstances. However, the ultimate issue is whether the putative client reasonably believed that the relationship existed and that the attorney would therefore advance the interests of the putative client. *Westinghouse Elec., supra.* In this case, appellee expressly appointed Brooks and Kushman to advance its position in the Patent and Trademark Office. To further that effort, appellee supplied Brooks and Kushman with confidential information. Furthermore, appellee agreed to pay one half of the attorney fees. Finally, Brooks and Kushman was aware that one half of the fees would be indirectly paid by appellee and that appellee would directly benefit from the successful prosecution of the patent application. From these circumstances, the trial court could properly infer that appellee reasonably believed that Brooks and Kushman owed duties to appellee to the same extent that the firm owed duties to appellant and that the confidential information supplied to Brooks and Kushman would not subsequently be used to degrade its interests. Therefore, the factual finding that Brooks and Kushman had an attorney-client relationship with appellee is supported by substantial evidence and will not be disturbed. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

 The factual finding of the court sets the parameters for the balance of our inquiry. The patent application was not abandoned until after this suit was initiated. Therefore, Brooks and Kushman, on behalf of one client, sued another present client. The subsequent abandonment of the patent application does not change the status of the issue. An attorney who is simultaneously representing two clients with differing interests cannot conform to the rules of ethics by merely discontinuing representation of one client after improperly initiating a lawsuit against that client. See *Sarbey, supra,* 66

Ohio App.3d at 25, 583 N.E.2d at 397, citing *Margulies v. Upchurch* (Utah 1985), 696 P.2d 1195.

Where an attorney seeks to represent a client with interests adverse to a *former* client, the attorney will be disqualified only where the present litigation bears a "substantial relationship" to the prior representation. *Spivey v. Bender* (1991), 77 Ohio App.3d 17, 601 N.E.2d 56, citing *Gould, Inc. v. Mitsui Mining & Smelting Co.* (N.D.Ohio 1990), 738 F.Supp. 1121. However, where an attorney undertakes employment against a current client, the rule is much more strict. "Where the relationship is a continuing one, adverse representation is prima facie improper * * * and the attorney must be prepared to show, at the very least, that there will be no actual or *apparent* conflict in loyalties or diminution in the vigor of his representation." (Emphasis *sic*.) *Cinema 5, Ltd. v. Cinerama, Inc.* (C.A.2, 1976), 528 F.2d 1384, 1387, cited with approval in *Estate of Roth v. Roth* (Jan. 2, 1991), Lucas App. No. L–90–291, unreported. In this case, the record fails to show that the law firm of Brooks and Kushman is able and willing to pursue both the instant litigation and the patent matter with equal vigor, without conflict, and without using confidential information to the detriment of appellee. Accordingly, we must conclude that there has been no abuse of discretion in granting the motion to disqualify Brooks and Kushman.

Finally, we note that appellant also makes the argument that the disqualification of Brooks and Kushman will result in increased attorney fees. This argument misses the point. The issue here is not attorney fees, but attorney ethics. The trial court has the authority and the duty to prevent a violation of the Code of Professional Responsibility involving conflicts of interest. *Royal Indemn. Co. v. J.C. Penney Co.* (1986), 27 Ohio St.3d 31, 34, 27 OBR 447, 450, 501 N.E.2d 617, 620. Therefore, appellant's right to its counsel of choice is limited by the ethical rules governing attorneys. Accordingly, appellant's sole assignment of error is not well taken.

On consideration whereof, the court finds that substantial justice has been done the party complaining. The court further finds good cause for this appeal. The order of the Wood County Court of Common Pleas is affirmed. It is ordered that appellant pay the court costs of this appeal.

*Judgment affirmed.*

ABOOD and MELVIN L. RESNICK, JJ., concur.