DECISION AND JUDGMENT ENTRY
Kenton and Rosanna Riley appeal the Scioto County Court of Common Pleas' dismissal of their complaint against the law firm of Kimble, Stevens, Young, Clark, Spears Rodeheffer ("the firm") for failure to obtain service of process upon the firm. The Rileys assert that they served the firm by serving four of its individual partners. We agree, because serving a partner effectively serves the partnership pursuant to Civ.R. 4.2(G). Additionally, the Rileys appeal the trial court's entry of summary judgment in favor of Roger Clark and Stephen Rodeheffer in their individual capacities. The Rileys assert that genuine issues of material fact exist as to whether Clark and Rodeheffer committed legal malpractice. We disagree as to Rodeheffer, because the Rileys failed to point to evidence raising a genuine issue of material fact as to whether Rodeheffer established an attorney-client relationship with the Rileys, and therefore reasonable minds could only conclude that Rodeheffer did not commit legal malpractice. We agree with the Rileys' assignment of error as to Clark, because the Rileys pointed to evidence raising genuine issues of material fact regarding whether Clark represented them, breached his duty as their attorney, and proximately caused them harm. We further find, under the circumstances of this case, that the Rileys' allegations of malpractice are within the realm of understanding of a lay jury, and therefore the Rileys were not required to present expert testimony to avoid summary judgment.
Accordingly, we reverse in part and affirm in part the judgment of the trial court.
 I.
The Rileys retained Clark and the firm in various legal matters over a period of more than twenty years. When Kenton Riley's mother passed away in 1991, the Rileys' engaged Clark as the attorney of record for the probate of her estate. The entry approving and settling the estate account was entered in the spring of 1993.
Also during the spring of 1993, Clark approached the Rileys to suggest that they purchase Premium Tours, Inc., dba The Cruise and Travel Shoppe ("the Travel Shoppe"), a local travel agency. Clark did not inform the Rileys that he represented the Travel Shoppe or that he owned forty percent of the Travel Shoppe's stock. Martha Graf, whom Clark referred to as the owner of the Travel Shoppe, owned only forty percent of the Travel Shoppe's stock. Steven Rodeheffer and Ralph Stevens, partners in the firm, owned the remaining shares.
During negotiations for purchase of the Travel Shoppe, the Rileys spoke with Clark frequently. Clark gave the Rileys an accountant's compilations of the Travel Shoppe's assets and liabilities and explained the Travel Shoppe's expected future income. Clark did not mention that the accounts receivable listed on the accountant's report consisted primarily of money that the corporate officers, including Clark, owed to the Travel Shoppe. Clark also did not inform the Rileys that an audit of the Travel Shoppe by the Airline Reporting Corporation ("ARC") was pending and that an ARC audit during the past year resulted in assessments for misappropriated monies, missing tickets, bad debts, and missing traveler's checks. Clark did not inform the Rileys that he was the guarantor on a business loan issued to the Travel Shoppe or that a tax lien encumbered all of the Travel Shoppe's assets.
The Rileys retained Clark to prepare articles of incorporation for Kenros, Inc., dba The Cruise and Travel Shoppe, a new corporation wholly owned by the Rileys and created for the purpose of running the Travel Shoppe. In the Rileys' presence, Clark asked Rodeheffer to sign as the statutory agent for Kenros. The Rileys paid the firm for filing the articles. Clark advised the Rileys that a title search was necessary before Kenros could purchase the Travel Shoppe, firm partner Jack Young conducted a title search, and the firm billed and accepted payment from the Rileys for the title search. Additionally, Clark prepared the sales agreement for the sale of the Travel Shoppe to the Rileys.
The Rileys paid one hundred thousand dollars for the Travel Shoppe in July 1993. Shortly thereafter, the Rileys learned of the Travel Shoppe's indebtedness, but not of Clark's connection to it. Clark advised the Rileys regarding their obligations with respect to the Travel Shoppe's debts. Clark also represented the Rileys in their application for ownership of a travel agency required by the ARC. Clark informed the Riley's that the ARC required an increase in their insurance bond because they were new owners. The Rileys paid for the increase and granted Clark power of attorney to obtain the bond insurance. In fact, the ARC required the bond increase not because the Rileys were new owners, but because of the Travel Shoppe's outstanding obligations.
The Riley's incurred significant expense in attempting to pay the creditors of the Travel Shoppe. By March 1994, the Rileys were no longer able to meet the monthly payments on their business loan, and the bank foreclosed. To prevent the sale of their home and land after foreclosure, the Rileys were forced to sell the timber on their land and refinance. The Rileys estimate that they lost a total of approximately two hundred-fifty thousand dollars in connection with their purchase of the Travel Shoppe.
The Rileys and Kenros (hereinafter "the Rileys") filed a complaint for legal malpractice, naming Clark, Rodeheffer, Young, Stevens, and the firm as defendants "in their capacities as individuals and/or partners, individually, jointly and severally." The Rileys attempted to serve all of the defendants by certified mail at the business office of the firm. Only Clark and Rodeheffer accepted service. The Rileys later served Young and Stevens, who were no longer with the firm, at their respective residences. The postal service returned the complaint addressed to the firm with the notation "attempted not known, no longer in existence." The Rileys did not attempt to serve the firm a second time.
Clark, Rodeheffer, Young and Stevens each filed for summary judgment. Clark and Rodeheffer attached affidavits to their motions in which they averred that they did not represent the Rileys and that their actions in dealing with the Rileys did not fall below the professional standard of care. The trial court entered summary judgment in favor of each of the individual defendants. The Rileys appealed the judgments in favor of Clark and Rodeheffer, but we dismissed for lack of a final, appealable order. The trial court then dismissed the complaint against the firm for failure to obtain service of process. The Rileys now appeal the judgments in favor of the firm, Clark and Rodeheffer, and assert the following four assignments of error:
 I. The trial court's dismissal with prejudice for failure of service is in error.
 II. The trial court's dismissal for failure to prosecute pursuant to Civil Rule 41(B)(1) is in error.
 III. Stephen C. Rodeheffer failed to meet his burden of proof that no genuine issue exists as to any material fact, in support of his motion for summary judgment pursuant to Civil Rule 56(B) and Dresher v. Burt.
 IV. Roger L. Clark failed to meet his burden of proof that no genuine issue exists as to any material fact, in support of his motion for summary judgment pursuant to Civil Rule 56(B) and Dresher v. Burt.
 II.
In their first and second assignments of error, the Rileys assert that the trial court erred by dismissing their action against the firm for failure to obtain service and failure to prosecute. Specifically, the Rileys assert that they properly served the complaint and all relevant subsequent filings upon the firm. The Rileys concede that the postal service returned the complaint they addressed to the firm. However, the Rileys assert that, by serving partners of the firm, they satisfied the requirements of Civ.R. 4.2(G) for service of process upon a partnership. Civ.R. 4.2 provides:
Service of process * * * shall be made as follows:
* * *
 (G) Upon a partnership * * * by serving the entity by certified or express mail at any of its usual places of business or by serving a partner, limited partner, manager or member.
The record reflects that the Rileys served Clark, Rodeheffer, Young, and Stevens, and that each were partners in the firm at one time. Paragraph one of the Rileys' complaint identifies the attorneys as defendants "in their capacities as individuals and/or partners." Hence, the Rileys contend that, despite the fact that the postal service returned the envelope addressed to the firm, their service upon the individual partners constituted service upon the firm.
Rodeheffer, though not conceding that he is a representative of the firm, argues on behalf of the firm that the Rileys' service upon the individual partners did not constitute service upon partners of the firm. Rather, Rodeheffer contends that, because the firm dissolved prior to service of the complaint, he and his former partners no longer existed in their capacity as partners when the Rileys served the complaint. Therefore, according to Rodeheffer, when he and his former partners accepted service in their individual capacities, they were not capable, as a matter of law, of accepting service on behalf of the firm. Rodeheffer also asserts that the Rileys only intended to serve the individual partners as individuals, and that the Rileys cannot now ask that the service "double" as service upon the firm.
If we accept Rodeheffer's interpretation of Civ.R. 4(G), then whenever a partnership suspects that it might be subject to a lawsuit, it can avoid liability by dissolving the partnership prior to the plaintiff's attempt to serve it. However, in R.C.1775.35(A), the General Assembly explicitly evidenced its intent to prevent partnerships from evading liability through dissolution. Pursuant to R.C. 1775.35(A), dissolving a partnership does not extinguish the existing liabilities of the partnership. Nothing in Chapter 17 of the Ohio Revised Code or in the Ohio Rules of Civil Procedure suggests an intent to treat partnerships differently than dissolved partnerships with respect to service of process.
Permitting partners of dissolved partnerships to accept service on behalf of the partnership also accomplishes the public policy underlying the service requirement. The purpose of service is to provide defendants with due process by notifying them of a new lawsuit in a method reasonably calculated to give them actual notice of the lawsuit. Skuratowicz v. Tracy (1996) 76 Ohio St.3d 103,104. Because a partnership, by definition, is comprised of partners, permitting service upon the partners of a dissolved partnership accomplishes the goal of notifying the dissolved partnership. See Haley v. Rural Cellular (March 13, 1997), Cuyahoga App. No. 70382, unreported. We decline Rodeheffer's invitation to interpret Civ.R. 4(G) so narrowly that no plaintiff can ever successfully serve a dissolved partnership.
We also reject Rodeheffer's argument that the Rileys originally intended to serve the individual partners only in their individual capacities, and that such an intent prevents the Rileys from later characterizing the individual service as service upon the firm. Rodeheffer asserts that the fact that the Rileys originally sent a separate complaint to the firm evidences their intent that each individual service applied only to the individual partner who accepted that service.
Rodeheffer cites no authority for his contention that service upon an individual cannot also function as service upon a partnership to which that individual belongs. In fact, the only authority Rodeheffer cites stands for the opposite conclusion; that service "reasonably calculated" to reach the interested parties is constitutionally valid. Akron-Canton Regional AirportAuth. v. Swinehart (1980), 62 Ohio St.2d 403.
Paragraph one of the Rileys' complaint clearly identifies their intent to initiate suit against the attorneys in their capacities both as individuals and as partners in the firm. The Rileys sent their complaint, by certified mail, to four named partners in the firm, a method reasonably calculated to give actual notice of their lawsuit. Thus, based upon Civ.R. 4(G), we find that the Rileys effectively served their complaint upon the firm when the individual partners accepted service. The trial court erred as a matter of law by refusing to recognize service upon the partners as service upon the firm. Accordingly, we sustain the Rileys' first and second assignments of error.
 III.
In their third and fourth assignments of error, the Rileys assert that the trial court erred by granting summary judgment in favor of Clark and Rodeheffer. The Rileys sued Clark and Rodeheffer both in their individual capacities and in their capacities as partners in the firm. Because the trial court dismissed the Rileys' claims against the firm for failure of service, we presume that the trial court only granted summary judgment on the claims against Clark and Rodeheffer in their individual capacities. Accordingly, we address only those claims in our review.
Summary judgment is appropriate only when it has been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(A). See Bostic v. Connor (1988),37 Ohio St.3d 144, 146; Morehead v. Conley (1991), 75 Ohio App.3d 409,411. In ruling on a motion for summary judgment, the court must construe the record and all inferences therefrom in the opposing party's favor. Doe v. First United Methodist Church
(1994), 68 Ohio St.3d 531, 535.
The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment.Dresher v. Burt (1996), 75 Ohio St.3d 280, 294, citing Mitseff v.Wheeler (1988), 38 Ohio St.3d 112, 115. However, once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest upon mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108,111; Dresher, supra at 294-95.
In reviewing whether an entry of summary judgment is appropriate, an appellate court must independently review the record and the inferences which can be drawn from it to determine if the opposing party can possibly prevail. Morehead,75 Ohio App. 3d at 411-12. "Accordingly, we afford no deference to the trial court's decision in answering that legal question." Id.
See, also, Schwartz v. Bank-One, Portsmouth, N.A. (1992),84 Ohio App.3d 806, 809.
In order to establish a cause of action for legal malpractice, a plaintiff must show: 1) that the attorney owed a duty or obligation to the plaintiff, 2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and 3) that there is a causal connection between the conduct complained of and the resulting damage or loss. Vahila v. Hall (1997), 77 Ohio St.3d 421, 427. The Rileys contend that they established genuine issues of material fact with respect to both Clark and Rodeheffer regarding each of these three factors.
 A.
The Rileys first contend that a genuine issue of material fact exists as to whether they had attorney-client relationships with Clark and Rodeheffer. Clark and Rodeheffer each attached their own affidavits to their motions for summary judgment, in which they averred that they did not represent the Rileys with respect to their purchase of the Travel Shoppe. Absent an attorney-client relationship, Clark and Rodeheffer owed no duty or obligation to the Rileys.
An attorney-client relationship sufficient to form the basis for a legal malpractice claim arises "when a person approaches an attorney with the view of retaining the attorney's services."David V. Schwarzwald, Robiner, Wolf Rock Co., L.P.A. (1992),79 Ohio App.3d 786, 798, citing Taylor v. Sheldon (1961), 172 Ohio St. 118, paragraph one of the syllabus. The type of evidence that supports a finding of an attorney-client relationship varies on a case-by-case basis. Henry Filters, Inc. v. Peabody Barnes, Inc.
(1992), 82 Ohio App.3d 255, 261. "However, the ultimate issue is whether the putative client reasonably believed that the relationship existed and that the attorney would therefore advance the interests of the putative client." Id. Relevant evidence that establishes whether an attorney-client relationship has been formed may include: (1) whether the attorney advises the putative clients as to their legal rights or the method for pursuing those rights; (2) whether the attorney has invoked the putative clients' trust and confidence; and (3) whether the attorney received payment of a fee from the putative client. SeeLandis v. Hunt (1992), 80 Ohio App.3d 662, 669.
 1.
In this case, the Rileys produced evidence that Rodeheffer was a partner in the firm between April 1993 and October 1994, that the firm filed articles of incorporation for Kenros on behalf of the Rileys, and that Rodeheffer signed the articles of incorporation as the statutory agent for Kenros. The Rileys' alleged in their complaint that Rodeheffer drafted the articles, but did not support their allegation with a sworn statement. In his affidavit, Rodeheffer emphatically denied drafting the articles. Rodeheffer also averred that he did not perform any functions as the statutory agent for Kenros, and that he agreed to sign as the statutory agent only because Clark needed an Ohio resident to do so before he could file Kenros' articles of incorporation. Rodeheffer further averred that he did not perform any other legal services for the Rileys. With his motion for summary judgment, Rodeheffer attached an excerpt from Kenton Riley's deposition wherein Kenton Riley admitted that, to his knowledge, the only act Rodeheffer performed on the Rileys' behalf was signing the articles of incorporation.
Even when construing this evidence in the light most favorable to the Rileys, we find that reasonable minds could not conclude that the Rileys established an attorney-client relationship with Rodeheffer. The Rileys did not establish that Rodeheffer ever offered them any guidance or advice regarding their legal rights, and the Rileys never paid Rodeheffer for such services. The Rileys did not establish that Rodeheffer invoked their trust. While the Rileys did produce evidence that they sought advice from, trusted, and paid the firm, that evidence is not relevant to their claim against Rodeheffer in his individual capacity. Hence, we find that Rodeheffer established that he, as an individual, was entitled to summary judgment because he did not represent the Rileys. However, we make no finding as to the merits of the Rileys' case against Rodeheffer in his capacity as a partner with the firm.
Accordingly, we overrule the Rileys' third assignment of error.
 2.
The Rileys likewise assert that they presented evidence creating a genuine issue of material fact as to whether they established an attorney-client relationship with Clark. The Rileys presented unrefuted evidence that Clark served as the attorney for the probate of Kenton Riley's mother's estate, and that the probate of that estate was not complete until after the Riley's purchased the Travel Shoppe. Clark admitted that he acted as the Rileys attorney on a number of occasions over the past twenty or more years. The Rileys both averred that they trusted Clark based upon their long established attorney-client relationship with him. The Rileys further averred that they spoke with Clark frequently regarding the purchase of the Travel Shoppe, that they believed Clark was representing them in the matter, and that Clark advised them that the Travel Shoppe was a good investment. The Rileys submitted bills from the firm, documents faxed to them from the firm, and cancelled checks written to the firm to support their allegations that: (1) they retained Clark to represent them in their purchase of the Travel Shoppe, and (2) Clark performed or arranged for his firm to perform the tasks of preparing the articles of incorporation for Kenros, drafting the sales agreement, and conducting the title search.
Clark contends that he did not represent the Rileys in their purchase of the Travel Shoppe, and that the Rileys failed to produce evidence establishing a genuine issue as to whether he represented the Rileys. Specifically, Clark notes that the Rileys produced no fee agreement to prove that they were engaged in an attorney-client relationship. Additionally, Clark contends that he was not engaged in an attorney-client relationship with the Rileys based upon his subjective perception that he had not formed such a relationship with the Rileys.
Evidence in the record shows that Clark advised the Rileys, performed work on their behalf, and induced them to trust him. Additionally, documents in the record show that the firm accepted payment from the Rileys for work that the Rileys retained Clark to perform. Clark does not dispute that he represented the Rileys in the past, yet he produced no written fee agreements regarding those matters. Therefore, we are not persuaded that the absence of a fee agreement in this case proves the absence of an attorney-client relationship. Additionally, while the attorney's subjective intent may be an indicator of whether a relationship exists, we do not agree that it definitively establishes the absence of a relationship, especially when substantial evidence supports the contrary conclusion.
Accordingly, we find that the record contains evidence that gives rise to a genuine issue of material fact as to whether the Rileys retained Clark as their attorney in their negotiations and purchase of the Travel Shoppe.
 B.
Next, the Rileys contend that they presented sufficient evidence to give rise to a genuine issue of material fact as to whether Clark breached his duty as the Rileys' attorney and as to whether that breach proximately caused harm to them.[1] Clark contends that the trial court correctly granted summary judgment in his favor because the Rileys failed to produce expert testimony establishing that his conduct fell below the relevant standard of care and that his conduct caused harm to the Rileys. The Rileys argue that they were not required to present expert testimony in this case because the applicable standard of care and its relation to their injury is obvious even to a lay jury.
Typically, the law requires plaintiffs to produce expert testimony establishing the applicable standard of care in legal malpractice cases. However, "[e]xpert testimony, or testimony at all, for that matter, is not always required to establish a standard of care." Kemper v. Builder's Square (1996), 109 Ohio App.3d 127,132-133. Expert opinions are not required when the conduct at issue is within the jury's general experience and knowledge. See McInnis v. Hyatt Legal Clinics (1984), 10 Ohio St.3d 112,113; Jones v. Hawkes Hospital of Mt. Carmel (1964),175 Ohio St. 503, 506-507. Even in medical and legal malpractice cases, where most factors relating to the standard of care are beyond the experience and understanding of a lay jury, affirmative evidence of the standard of care is not necessary if the relevant factors are within the jury's understanding. McInnis
at 113; Kemper at 132, citing Thompson, Admx. v. Ohio Fuel GasCo. (1967), 9 Ohio St.2d 116, 117-118. Ohio courts faced with the question of whether to require expert testimony generally "`resolve doubtful questions in favor of allowing the jury to decide the issue of negligence without its aid.'" Thompson at 118, quoting 2 Harper James, The Law of Torts (1956), 966, Section 17.1.
In this case, the Rileys claim that a lay jury could recognize that an attorney breaches his duty to his client when the attorney betrays the client's trust by neglecting to inform the client that their respective interests are adverse. Additionally, the Rileys contend that it is obvious to a lay jury that an attorney breaches his duty when the attorney fails to advise his client of crucial information known to the attorney, such as the fact that the business the client intends to purchase is encumbered by a tax lien. Finally, the Rileys contend that a lay jury could readily understand that Clark caused them harm by advising them to purchase the Travel Shoppe, at a cost of one hundred thousand dollars, despite his knowledge of the Travel Shoppe's extensive financial troubles.
Clark contends that the Rileys' claim is virtually identical to the legal malpractice claim asserted in Northwestern Life Ins.Co. v. Rogers (1989), 61 Ohio App.3d 506. In Northwestern Life,
the defendant-attorney represented the plaintiffs-buyers in a real estate transaction while he also held an interest in a title insurance agency. The plaintiffs' sued the attorney when complications arose. The trial court granted summary judgment in favor of the attorney, rejecting the plaintiffs' argument that they established malpractice per se by producing evidence that the attorney violated the conflict of interest provisions of the Code of Professional Responsibility. The court held that, "[b]ecause of the very nature and complexity of the Code of Professional Responsibility * * * expert testimony is required to support the allegations except in those cases which are so patently obvious as to negate this requirement." NorthwesternLife at 512. The court went on to find that the plaintiffs' allegation of malpractice based upon their attorney's conflict of interest in a real estate transaction was not so patently obvious as to negate the expert testimony requirement.
In reaching its judgment, the Northwestern Life court noted that the plaintiffs failed to allege how their attorney's conflict of interest directly and proximately caused harm to them. The record showed that the attorney withdrew upon learning of the conflict. The plaintiffs did not point to specific conduct that caused them harm, nor did they allege any damages resulting from the attorney's conduct. Id. at 511-512. The method, if any, by which the attorney may have profited as a result of the conflict of interest was neither alleged nor apparent from the facts.
In contrast to the Northwestern Life plaintiffs, the Rileys alleged that Clark's conflict of interest directly and proximately caused them to incur damages to Clark's direct benefit. Specifically, the Rileys alleged that Clark's conflict of interest motivated Clark to misrepresent the meaning of the accountant's report and title search, to structure the sales agreement with terms favorable to the Travel Shoppe, and to encourage the Rileys to purchase the Travel Shoppe. The Rileys further alleged that they relied upon Clark's advice because they believed they had retained him, and that they incurred quantifiable financial harm as a result of that reliance. Moreover, unlike the conflict in Northwestern Life, the conflict in this case did not involve a third party whose ability to profit from the transaction was complex or unclear. Rather, the advantage to the Travel Shoppe's owners, including Clark, in misleading the Rileys is obvious: Clark profited directly from advising the Rileys to pay an inflated price for a failing business that he secretly owned in part.
Construing the evidence before the trial court in the light most favorable to the Rileys, we find that the questions of whether Clark breached his duty to the Rileys and whether he proximately caused their harm is within the jury's general experience and knowledge. Additionally, we find that reasonable minds could conclude that Clark breached his duty and caused harm to the Rileys. Thus, we find that Clark did not meet his burden of showing that no genuine issues of material fact existed for trial and that reasonable minds could only conclude that he did not commit legal malpractice. Therefore, we find that the trial court erred when it entered summary judgment in favor of Clark in his individual capacity.
Accordingly, we sustain the Rileys' fourth assignment of error.
 IV.
In conclusion, we find that the trial court erred as a matter of law when it dismissed the Rileys' complaint against the firm for failure to obtain service of process upon the firm. Additionally, we find that the trial court erred by granting summary judgment in favor of Clark, because the Rileys pointed to evidence raising genuine issues of material fact regarding their malpractice claim against Clark. The trial court did not err by granting summary judgment in favor of Rodeheffer in his individual capacity, because the Rileys failed to point to any evidence that they were engaged in an attorney-client relationship with Rodeheffer. However, we note that our determination pertains to Rodeheffer in his individual capacity only, and we make no determination as to the liability of the firm.
Accordingly, we reverse in part and affirm in part the judgment of the trial court, and remand this case to the trial court for further proceedings consistent with this opinion.
JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART AND REVERSED IN PART and the cause remanded to the trial court for further proceedings consistent with this opinion and that costs herein be taxed equally between the parties.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated upon the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. and Evans, J.: Concur in Judgment and Opinion.
For the Court
 BY: _______________________________ Roger L. Kline, Presiding Judge
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes afinal judgment entry and the time period for further appealcommences from the date of filing with the clerk.
[1] Because we found that the trial court properly entered summary judgment in favor of Rodeheffer based upon the Rileys' failure to produce evidence of an attorney-client relationship, we do not reach the breach of duty question with regard to Rodeheffer's actions.