**HATFIELD et al.**

v.

**SEVILLE CENTRIFUGAL BRONZE.**

Court of Common Pleas of Ohio,
Medina County.

No. 00–CIV–0040.

Decided April 25, 2000.

*David W. Hilkert,* for plaintiffs.

*Donald E. Lampert* and *David N. Brown,* for defendant.

JAMES L. KIMBLER, Judge.

## STATEMENT OF THE CASE

Danny Hatfield was an employee of Seville Centrifugal Bronze ("Bronze"). On August 30, 1999, he and another employee, Kenneth R. Bishop, were injured in an accident on Bronze's property. At the time of the accident, they were working for the company. As a result of the accident, each brought a lawsuit alleging an intentional tort by Bronze. The cases were consolidated for trial, but are no longer consolidated. In each case is a motion to disqualify counsel for both Hatfield and Bishop. The same law firm, Buckingham, Doolittle and Burroughs, represents both Hatfield and Bishop.

The motions filed in both cases are identical. The motions allege that Buckingham, Doolittle and Burroughs represented David Banks, Sr., who is the owner of approximately eighty percent of the shares of Bronze. The motion alleges that this representation of Banks bars the same law firm from now suing the company.

The parties agree that this court's ruling on the Hatfield disqualification motion will also be binding on the parties in the Bishop case. Judge Christopher J. Collier, who is the judge hearing the Bishop case, approved this agreement.

## FINDINGS OF FACT

Beginning in 1991, lawyers from the Buckingham firm advised Banks on matters relating to the valuation of his company's stock. The first year, 1991, Banks was advised on how to value his stock. After that, he was advised on how to transfer stock for the benefit of himself and his children and/or grandchildren. All of this advice was for estate planning purposes.

Lawyers who are not involved in either the Hatfield or Bishop cases gave all of this advice. While the statements for the work were sent to the company's address, the bills themselves were made out to Banks as "David Banks, President, Seville Centrifugal Bronze Co." The last bill sent to Banks for this estate planning advice was sent on July 8, 1999.

While lawyers from Buckingham were doing this estate work for Banks, other attorneys from other law firms were advising the company in corporate matters, including litigation. Buckingham never advised the company on legal matters after Banks acquired its stock. Once, prior to that time, Buckingham did legal work for the company, but that representation has nothing to do with the present disqualification motion.

When Buckingham decided to represent Hatfield and Bishop, it decided to get an advisory opinion from Professor Becker of the University of Akron School of Law. The opinion was on whether the representation of Hatfield and Bishop was a violation of the Ohio Code of Professional Conduct. He concluded that it was not. His conclusion was based on the theory that Buckingham never represented the company and that the representation of Banks did not involve confidential communications that could jeopardize the defense in the Hatfield and Bishop cases. In his analysis he considered the situation to be neither a successive nor simultaneous representation problem.

The company called its own ethical expert at the hearing. Its expert was Professor Lawry from Case Western Reserve University School of Law. His analysis was entirely different. He looked upon this as a simultaneous representation problem. He also believed that the important factor is not how the law firm looks at the problem, but how the client looks at it.

Banks regards this case as one where his attorneys are suing him. He looks upon his company as his alter ego. He believes that Buckingham represented him when the lawsuits were filed. His perception is that this is a disloyal act. He sees the act as an example of "greedy lawyers."

Before the two suits were filed, Buckingham did not attempt to get Banks to consent to Buckingham's representation of Hatfield and Bishop.

## GENERAL DISCUSSION OF LAW APPLICABLE
## TO MOTION TO DISQUALIFY COUNSEL

Ohio has two different approaches to motions to disqualify counsel. These approaches depend on whether the case is one of successive representation or simultaneous representation. In some respects a trial court must engage in similar analysis under both approaches; in other respects the analysis differs.

In both successive and simultaneous representation cases there is a rebuttable presumption that disclosure of confidences has taken place. *Sarbey v. Natl. City Bank, Akron* (1990), 66 Ohio App.3d 18, 26–27, 583 N.E.2d 392, 397–399.

■ Once an attorney-client relationship has been established, the determination of whether a conflict of interest exists by virtue of adverse representation depends on whether confidential information was imparted during the attorney-client relationship, and whether there is a threat of improper use of that information in violation of DR 4–101 through the adverse representation. *Id.* at 26, 583 N.E.2d at 398.

■ The primary purpose behind the prohibition in DR 5–105 against dual representation of clients with adverse interests is to ensure that confidences or secrets of a client imparted to an attorney in the course of their attorney-client relationship will not be revealed to an adverse party or used to the client's disadvantage. *Id.*

■ If the disqualification motion concerns successive representation, then the burden of proof is on the client to show that there is a substantial relationship between the subject matter of a former representation and that of a subsequent adverse representation. *Id.* at 23, 583 N.E.2d at 396.

■ If the disqualification motion concerns simultaneous representation, then courts do not apply the "substantial relationship test." *Id.* at 24, 583 N.E.2d at 396.

■ Simultaneous representation is prima facie improper, and an attorney who is seeking to sue a present client must show that there is no actual or apparent conflict of loyalties or diminution of vigor in his or her representation. *Id.*

■ Disqualification of an attorney in a successive representation case is granted only when representation poses a significant risk of a violation of the Code of Professional Responsibility. *Henry Filters, Inc. v. Peabody Barnes, Inc.* (1992), 82 Ohio App.3d 255, 259, 611 N.E.2d 873, 875.

■ In a successive representation case the moving party must show that disqualification is absolutely necessary to counter the significant risk of a violation of the Code of Professional Responsibility. *Phillips v. Haidet* (1997), 119 Ohio App.3d 322, 324, 695 N.E.2d 292, 293–294.

In a successive representation case the moving party must show that the trial will be tainted. *Id.* at 327, 695 N.E.2d at 295–296.

DR 5–105(C) allows for simultaneous representation only in narrow circumstances: if it is obvious that the attorney can adequately represent both interests, and if each client consents to such representation after full disclosure of the possible effect of such representation. *Sarbey* at 29, 583 N.E.2d at 400.

Evidence that supports the existence of an attorney-client relationship will vary from case to case. *Henry Filters,* 82 Ohio App.3d at 261, 611 N.E.2d at 876–877.

■ The ultimate issue is whether the putative client reasonably believed that the relationship existed and that the attorney would therefore advance the interests of the putative client. *Id.*

## ISSUES PRESENTED

Did the work performed for Banks for his personal estate planning reasonably cause Bronze to believe that the Buckingham law firm was its attorney?

If Bronze believed that Buckingham was its attorney, was the attorney-client relationship in existence at the time the Hatfield and Bishop cases were filed?

If there was a present attorney-client relationship between Buckingham and Bronze, does that fact alone justify disqualification?

## DISCUSSION

■ In analyzing this problem, the court must keep in mind that Banks is not being sued. The lawsuit is only against Bronze. Because Banks is not a party, he has no standing to bring a disqualification motion. Since Banks did not bring the motion, the analysis is not on what he believed, but what Bronze reasonably believed. This is because the putative client is not Banks, but Bronze.

In analyzing what the corporation believed, knowledge of the president must be imputed to the corporation. This means knowledge of the work Buckingham did for Banks personally as well as the knowledge Buckingham had of Bronze's corporate affairs. This is permissible because Bronze is such a closely held corporation, and because Banks is both the majority stockholder and the president.

If Bronze reasonably believed that Buckingham represented it when Buckingham was doing work for Banks on his estate planning, then this is a case of simultaneous representation, and not successive representation.

■ The court believes that when an attorney gives annual advice and services to a client, and no action is taken by the attorney to formally notify the client that its representation of the client ceased, then the attorney is the client's attorney for the following year. If, during that following year, the attorney sues the client, then the attorney is simultaneously representing two clients with adverse interests.

The burden of establishing that Bronze reasonably believed that Buckingham's representation of Banks made Buckingham its law firm is on Bronze. It must establish such a reasonable belief by a preponderance of the evidence. The burden of establishment is on Bronze because the law favors allowing parties to be represented by the attorneys of their choice.

The testimony of Banks establishes that he considers himself and the company to be one and the same. This is very understandable, since he owns eighty percent of the stock and is its president. In addition to his belief, there is the fact that the work done for Banks was sent to the company's address and used the title of president. The company paid for the work. The work concerned ownership of the corporate stock, which is very much of interest to the corporation.

On the other side of the ledger is the fact that Bronze never used Buckingham for any corporate work since Banks acquired the company's stock. It hasn't advised Bronze on any corporate matters since Banks's acquisition of the company's stock. The uncontradicted evidence is that from that time either attorney David Brown of Medina or counsel recommended by him or insurance defense counsel has performed legal work for the company.

The court finds that Bronze has not met its burden of establishing that it reasonably believed that Buckingham was doing its legal work when Buckingham was developing and carrying out Banks's estate planning. Never did Bronze treat or use Buckingham as its corporate attorney after Banks's acquired its stock. While this court understands Banks's feelings of betrayal, those feelings are not enough to justify finding that Buckingham represented Bronze when Buckingham was doing estate planning for Banks.

Because this court finds that Buckingham was not representing Bronze when it did the estate planning for Banks, this is neither a case of successive nor simultaneous representation. Therefore, this court does not have to determine whether there was a substantial relationship between the work done for Banks and the lawsuits filed by Hatfield and Bishop. Neither does it have to consider whether there is any possible taint to the trial in this matter.

This court can find no Ohio cases where disqualification of an attorney or a law firm was based merely on an appearance of impropriety. This court believes that the fact situation in this case could arguably create such an appearance, but given Ohio case law, disqualification is not a remedy for trial court to use in such cases.

### HOLDING AND ORDER

The motion to disqualify plaintiffs' counsel is overruled.

IT IS SO ORDERED.

*Motion denied.*