**SST CASTINGS, INC., Plaintiff,**

v.

**AMANA APPLIANCES, INC., Defendant.**

**No. C–1–02–592.**

United States District Court,
S.D. Ohio,
Western Division.

Oct. 18, 2002.

Deborah Ruth Lydon, Jennifer Marie Orr, Dinsmore & Shohl, Cincinnati, OH, for plaintiff.

Earle Jay Maiman, Thompson, Hine & Flory, Cincinnati, OH, William B. Leahy, Karen E. Rubin, Thompson, Hine & Flory, Cleveland, OH, Bryce A. Lenox, Thompson, Hine LLP, Cincinnati, OH, for defendant.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Plaintiff's Motion to Disqualify Defendant's Counsel (doc. 4), Defendant's Response (doc. 15), Plaintiff's Reply (doc. 21), Defendant's Sur–Reply (doc. 27), Plaintiff's Response to Defendant's Sur–Reply (doc. 28), and Plaintiff's Notice of Supplemental Authority in Support of Plaintiff's Motion to Disqualify (doc. 29). The Court, for the reasons more fully stated below, finds that the facts of this case militate against disqualification of Defense Counsel.

## I. BACKGROUND

This action is about a quantity of specially-fabricated goods, castings, that Plaintiff alleges Defendant ordered but for which Defendant refuses to pay, denying the alleged order. The present dispute before the Court, however, is whether the Court should disqualify Defense Counsel for allegedly violating DR 5–105, DR 4–101, and ethical considerations of the Ohio Code of Professional Responsibility by representing Defendant Maytag Corporation, d/b/a Searcy Laundry Products,

("Maytag") (erroneously named "Amana Appliances, Inc." in the Complaint), when Defense Counsel's Cincinnati office has represented Plaintiff SST Castings ("SST") in the past, and when its Washington D.C. counsel currently represents SST in a matter until only recently held in abeyance before the U.S. Court of International Trade.

Plaintiff's motion attempts to apply the well-established precedent on attorney disqualification to a factual situation of first impression before this Court. This case is not the classic case where a lawyer leaves a firm and her knowledge is imputed to the transferee firm, which can be disqualified. *Kala v. Aluminum Smelting & Refining Co., Inc.,* 81 Ohio St.3d 1, 688 N.E.2d 258 (1998). The fact pattern in this case is basically the inverse: whether the firm the lawyer and client left behind should be disqualified when that firm is now in an adverse position to the former lawyer and the essentially former client.

SST had for many years been represented by the firm of Thompson Hine LLP ("Thompson Hine") until December 31, 2001, when a former partner of Thompson Hine, Barbara Schwartz Bromberg, left Thompson Hine, taking substantially all of SST's legal work with her to her new firm, Dinsmore and Shohl ("Dinsmore"). In order to accommodate SST, Ms. Bromberg, and Dinsmore, Thompson Hine kept three SST matters: one that settled; a second that Dinsmore could not accept due to a conflict, (which was subsequently handed on to other counsel); and a third, an import tax refund complaint that Ms. Bromberg had funneled through Karyn Booth, a partner in Thompson Hine's Washington D.C. office. That final matter was held in abeyance by the U.S. Court of International Trade, pending resolution of a test case selected to resolve the merits of the challenge to the Harbor Maintenance Tax as applied to imports. The Parties inform the Court that in August 2002, the International Trade Court resolved the test case, in a manner against the interests of SST, and SST states that it intends to join in an appeal of that decision, *Thomson Multimedia, Inc. v. United States,* 219 F.Supp.2d 1322 (2002). Karyn Booth, who spent at most six hours for SST filling out forms for the tax refund complaint, is still co-counsel for SST, with Ms. Bromberg of Dinsmore.

## II. THE LEGAL STANDARD

A motion to disqualify counsel is the proper method for a party to bring an alleged breach of ethical duties to the court's attention. *Kitchen v. Aristech Chemical,* 769 F.Supp. 254, 256 (S.D.Ohio 1991)(*citing Musicus v. Westinghouse Elec. Corp.,* 621 F.2d 742 (5th Cir.1980)). The power to disqualify an attorney, or attorneys, from a case is incidental to all courts, and a district court is obliged to consider unethical conduct by an attorney in connection with any proceeding before it. *Ex Parte Burr,* 22 U.S. (9 Wheat) 529, 531, 6 L.Ed. 152 (1824) (Marsall, C.J.). However, a trial court does not possess unfettered discretion to disqualify counsel. *Kitchen,* 769 F.Supp. at 258. Furthermore, a violation of the rules of professional ethics does not automatically necessitate disqualification of an attorney. The extreme sanction of disqualification should only be utilized when there is a "reasonable possibility that some specifically identifiable impropriety" actually occurred, and where the public interest in requiring professional conduct by an attorney outweighs the competing interest of allowing a party to retain counsel of his choice. *Id.* at 257–59 (*quoting Woods v. Covington County Bank,* 537 F.2d 804 (5th Cir.1976)). While motions to disqualify may be legitimate and necessary under certain circumstances, they "should be viewed with extreme caution for they can be misused as

techniques of harassment." *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 722 (7th Cir.1982). Ohio courts have held that a litigant's right to "select counsel of choice should be limited only when representation poses a significant risk of a violation of the Canons of the Code of Professional Responsibility." *Henry Filters, Inc. v. Peabody Barnes, Inc.*, 82 Ohio App.3d 255, 611 N.E.2d 873, 875 (1992).

The Sixth Circuit has noted that the reality of the changing nature of legal practice "must be at the core of the balancing of interests necessarily undertaken" when courts consider motions for disqualification of counsel. *Manning v. Waring, Cox, James, Sklar, and Allen*, 849 F.2d 222 (6th Cir.1988). The *Manning* court articulated that:

> Perhaps these motions have become more numerous simply because the changing nature of the manner in which legal services are delivered may present a greater number of potential conflicts. Certainly, the advent of law firms employing hundreds of lawyers engaging in a plethora of specialties contrasts starkly with the former preponderance of single practitioners and small firms engaging in only a few practice specialties. In addition, lawyers seem to be moving more freely from one association to another, and law firm mergers have become commonplace. At the same time that the potential for conflicts of interest has increased as the result of these phenomena, the availability of competent legal specialists has been concentrated under fewer roofs.

*Id.* at 225.

Southern District of Ohio Local Rule 83.4 provides that the Model Federal Rules of Disciplinary Enforcement govern the supervision of attorney conduct for those admitted to practice before the Southern District as well as those admitted for a particular proceeding (*pro hac vice*). S.D. Ohio Local Rule 83.4(f). Model Rule IV in turn adopts the forum state's code of professional responsibility and conduct. *Kitchen*, 769 F.Supp. at 258. Accordingly, analysis of counsel's conduct utilizes the standards established by the Ohio Code of Professional Responsibility; however, since questions of ethics in federal cases are ultimately questions of federal law, courts are guided by federal case law, the American Bar Association's comments to its Model Rules, and the policies underlying the particular rules at issue. *Id.* at 258 (*citing In re Snyder*, 472 U.S. 634, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985)).

The particular rules Plaintiff puts at issue in this case are Disciplinary Rules 5–105 and 4–101. Disciplinary Rule 5–105, specifically relates to concurrent employment, stating "[a] lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client." Ohio Code of Professional Responsibility DR 5–105(B). In the case that a lawyer's independent professional judgment is likely to be affected, a lawyer still may represent multiple clients if "he can adequately represent the interest of each" and if each client consents after full disclosure of the possible affect on the lawyer's independent professional judgment. DR 5–105(C). DR 4–101 essentially forbids a lawyer from knowingly revealing a confidence or secret of his client, or from using a confidence or secret to the disadvantage of his client, or for advantage of himself or a third person without consent of the client. DR 4–101(B). It also defines "secret" as "information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client." DR 4–101(A).

Cases on disqualification show that courts have applied a different standard depending on whether the representation was of a former client, as opposed to a current client. *Pioneer–Standard Electronics, Inc. v. Cap Gemini America, Inc.,* 2002 WL 553460 *2, 2002 U.S. Dist. LEXIS 7120 *8 (N.D.Ohio March 11, 2002). As to former clients, the Sixth Circuit, following circuits nationwide, distilled the rules on conflicts of interest and client confidentiality into a three-part test in *Dana Corp. v. Blue Cross & Blue Shield Mut. Of N. Ohio,* 900 F.2d 882, 889 (6th Cir.1990). The *Dana* test analyzes: (1) Whether a past attorney/client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) whether the subject matter of those relationships is substantially related; and (3) whether the attorney acquired confidential information from the party seeking disqualification. *Id.* at 889. The party moving for disqualification bears the initial burden of persuasion and proof on its motion. *Bartech Industries, Inc. v. International Baking Co., Inc.,* 910 F.Supp. 388, 392 (E.D.Tenn.1996).

The *Dana* substantially-related test, however, is not applicable to a case where an attorney undertakes employment against a current client. *Pioneer–Standard,* 2002 WL 553460 *2, 2002 U.S. Dist. LEXIS 7120 *8. "[W]here an attorney undertakes employment against a current client, the rule is much more strict." *Id. citing Henry Filters, Inc. v. Peabody Barnes, Inc.,* 82 Ohio App.3d 255, 611 N.E.2d 873, 877 (1992). Under the stricter test applied to continuing relationships, "adverse representation is prima facie improper, and the attorney must be prepared to show, at the very least, that there will be no actual or apparent conflict in loyalties or diminution in the vigor of his representation." *Id.* at *9, 2002 WL 553460 at *3 *citing Cinema 5, Ltd. v. Cinerama, Inc.,* 528 F.2d 1384, 1387 (2d Cir.1976).

The stricter test, however, is not a per se rule against an attorney representing clients adverse to one another. *Id.* Rather, a rebuttable presumption is established by concurrent representation. *Id.* There is no violation of DR 5–105 if the attorney can show that he can represent adverse clients concurrently with equal vigor, without conflict of loyalties and without using confidential information to the detriment of either client. *Id. citing Henry Filters,* 611 N.E.2d at 877.

## III. ANALYSIS

For the sake of clarity, the Court will consider separately the arguments for disqualification of Defense Counsel based upon its past relationship with SST, first, and then upon its current relationship, second.

## A. SST Has Not Demonstrated that Its Past Relationship With Thompson Hine Meets the Second and Third Prongs of *Dana*

Plaintiff argues that a past attorney/client relationship exists between SST and Thompson Hine thus establishing the first prong of the *Dana* test (doc. 4). As recently as May 2002, one or more attorneys of Thompson Hine's Cincinnati office represented SST in the Court of Common Pleas of Hamilton County, Ohio, in *SST Bearing Corp. v. Pulliam Enterprises, Inc.,* Case No. A 0004739 (*Id.*). Plaintiff argues that it believes that over the course of its long-term relationship with Thompson Hine, that the law firm acquired confidential information and documents that would adversely affect Plaintiff in the current litigation (*Id.*).

Defendant responds that disqualification is a drastic measure unsupported by the facts in this case (doc. 15). Defendant explains that Thompson Hine's longstanding relationship was administered by former partner, Ms. Bromberg, who left

Thompson Hine, taking substantially all of SST's legal work with her to her new firm, Dinsmore (*Id.*). Defendant argues that Ms. Bromberg could not take the Ohio matter, *Pulliam,* along with her because Dinsmore was already representing Defendant Pulliam Enterprises in the case (*Id.*). Thompson Hine, therefore, continued to represent SST in connection with the *Pulliam* case until May 13, 2002, when Thompson Hine turned the case over to successor counsel (*Id.*). That transition occurred before the present suit was filed (*Id.*).

Defendant argues that Plaintiff has not shown how that as a result of now-concluded representation, Thompson Hine has confidential information that would be relevant to this case (*Id.*). Defendant argues, therefore, that under the *Dana* test, Plaintiff cannot establish the second or third prongs: a substantial relationship between the matter comprising the past relationship and the current matter, and confidential information of the movant acquired by the attorney sought to be disqualified (*Id.*). Defendant argues under *Phillips v. Haidet,* 119 Ohio App.3d 322, 695 N.E.2d 292 (1997) and *Columbus Credit Co. v. Evans,* 82 Ohio App.3d 798, 613 N.E.2d 671, 677 (1992) that in order to establish a "substantial relationship" between two matters, those two matters must have a clear connection as established by similar or related factual contexts (*Id.*). In its response, Defendant essentially argues that Plaintiff has only alleged that Thompson Hine has represented SST in general corporate matters, but has not pleaded sufficient facts to establish a clear connection between those general corporate matters and the breach of contract action at hand (*Id.*).

In reply Plaintiff produced copies of three recent cases in which Thompson Hine represented SST, that involved allegations, as in this case, of breach of contract (doc. 21).

Defendant's Sur–Reply (doc. 22) further argues that SST, despite its production of breach of contract cases, has still failed to show any substantial relationship between those cases and the present one because Plaintiff has not shown what legal issues were involved or how they were the same or identical to the case at bar (*Id.*). Plaintiff's response to Defendant's Sur–Reply (doc. 28) argues that by showing three cases involving breach of contract, it has indeed shown a substantial relationship between the prior relationship that is in conflict with the current representation (*Id.*). Plaintiff also posits that Ms. Bromberg did not personally litigate SST cases, but that other attorneys at Thompson Hine were involved in interviewing witnesses, reviewing documents, and discussing litigation strategies (doc. 21). Plaintiff argues that if the Court requires an even greater showing of a "substantial relationship" such inquiry should be conducted by an *in camera* examination, or risk improperly revealing work product to Defendant (*Id.*).

■ The Court finds persuasive Defendant's arguments that Thompson Hine's past representation of SST does not meet the second and third prongs of *Dana*. The simple fact that a law firm has represented a client in garden-variety contract disputes, does not mean that when the client chooses representation by another firm, the client has veto power to block its former firm from representing an adverse party in yet another garden-variety contract dispute. Under this theory a client could strategically hire a number of firms to represent its general interests and then block all adversaries from accessing representation from those firms. The Court rejects this view as inconsistent with the public interest and the purpose of the Code of Professional Responsibility. SST has not shown how it has any patented trade secrets or other information that

Thompson Hine would have accessed in prior representation that would likely be detrimental to SST's interests today. The former cases involving SST are in the public record. Any law firm or adversary can access them to see SST's litigation strategy and history.

Case law from around the country further indicates that many courts have rejected motions to disqualify based upon an attorney's background information or familiarity of the workings of a corporation. *In re Chantilly Construction Corp.*, 39 B.R. 466, 470–71 (Bankr.E.D.Va.1984) ("familiarity with the workings of a corporation or the personalities of its representatives...is totally insufficient as a basis for disqualification"), *English Feedlot, Inc. v. Norden Laboratories, Inc.*, 833 F.Supp. 1498 (D.Colo.1993)("background information" about a former client's "settlement strategy and philosophy" an inadequate basis for disqualification). As such, the Court finds that in this case, SST has failed to establish a substantial relationship between the matters for which Thompson Hine formerly represented SST and the matter currently at hand. Thompson Hine's knowledge of SST and its strategy in the former cases is an insufficient basis for disqualification. Furthermore, the Court finds that Thompson Hine did not, as a result of such representation, acquire information meriting protection within the scope of *Dana.*

Additionally, the Court notes that to disqualify Thompson Hine in this case would be patently unfair. Thompson Hine has represented Defendant Maytag for at least three years. It would not be fair to force Maytag to find other representation because its adversary SST was a former client of Thompson Hine generally and in contract disputes. Nor would it be fair for a lawyer who has left a firm to advocate disqualification of her former colleagues on the basis of their representation of a client, when the lawyer who left essentially took the client with her. SST is thus attempting to convert legal principles intended to shield it from impropriety into a sword to attack its adversary Maytag, in the absence of impropriety. Such attack is not well-countenanced by this Court.

## B. Thompson Hine Has Rebutted The Presumption Against Concurrent Representation

Defendant posits that the only arguably "current" representation of SST Castings, the import tax refund case that went into abeyance before Ms. Bromberg left the firm, is very limited, and does not violate the firm's duty of loyalty to any client (*Id.*). Defendant urges the Court to consider the approach taken by Judge Patricia A. Gaughan, of the United States District Court for the Northern District of Ohio, who found no current-client conflict of interest in *Pioneer–Standard,* 2002 WL 553460, 2002 U.S. Dist. LEXIS 7120, a case very similar to the case at bar (*Id.*). *Pioneer–Standard* involved a commercial dispute over the sale of a computer system (*Id.*). Plaintiff claimed that at the same time defendant's counsel was opposing plaintiff in the commercial case, it was representing plaintiff in a regulatory matter in abeyance before the European Trade Commission (*Id.*). The district court denied the motion to disqualify, holding that the movant had failed to show any relationship between the two cases, and that the European commission matter was in abeyance, and involved only minor work by different lawyers in a different office than those who were carrying out the defense in the commercial case (*Id.*).

■ Defendant argues that just as the Northern District of Ohio found the regulatory matter in *Pioneer–Standard* to be a discrete matter that presented no conflict of loyalties, so this Court should find the tax refund case in abeyance (until recently)

before the U.S. Court of International Trade to present no conflict of loyalty (*Id.*). The Court finds credible Defendant's assertion in its Sur–Reply that the harbor tax case is completely unrelated to the present case, and therefore that it is completely impossible for any confidential information theoretically in the possession of Thompson Hine's D.C. counsel to be used to the detriment of SST in the current litigation (doc. 27). Defendant's argument is well-taken.

Plaintiff's attempt to distinguish *Pioneer–Standard* on the basis of the lack of long-term relationship between Counsel and the adverse client in that case is not persuasive. The relevant consideration in *Pioneer–Standard* is that of loyalty not length of representation. Specifically, *Pioneer–Standard* states that concurrent representation passes muster when the attorney/law firm can represent adverse clients concurrently with equal vigor, without conflict of loyalties and without using confidential information to the detriment of either client. 2002 WL 553460 at *3, 2002 U.S. Dist. LEXIS 7120 at *9.

Plaintiff also raised the issue of consent in its Reply and Sur–Reply (docs. 21 & 28). Plaintiff cites *Jacobs v. Michael*, Case No. C–3–89–288, 1992 WL 1258519 *2, 1992 U.S. Dist. LEXIS 22754 *7 (S.D.Ohio, May 11, 1992) (*citing Picker International, Inc. v. Varian Associates, Inc.*, 670 F.Supp. 1363 (N.D.Ohio, 1987) *affirmed*, 869 F.2d 578 (Fed.Cir.1989))for the proposition that DR 5–105 prohibits a lawyer and his or her firm from representing a party opposing a current client in a lawsuit without, at minimum, the consent of that client. Plaintiff argues that it has never consented to Thompson Hine's representation of Maytag, so that such representation violates DR 5–105. Interestingly, this precise issue was also addressed in *Pioneer–Standard:*

Pioneer asserts that "absent consent by both clients to the conflict, the adverse representation is to be declined; if it is not, then the law firm must be disqualified." Apparently, Pioneer believes there is a per se rule against adverse representation, unless the clients consent. However, this Court finds Pioneer's argument to be a misreading of DR 5–105. DR 5–105 is framed in such a way that if there is a violation of DR 5–105(b), that violation can be cured under DR 5–105(C) if the clients consent and it is obvious that the attorney can represent both adequately. However, the analysis must start with whether there is a violation of DR 5–105(B) because if there is no violation, there is no need for consent.

2002 WL 553460 at *3, 2002 U.S. Dist. LEXIS 7120 n. 2 at *10. Judge Gaughan further clarified that this misreading of DR 5–105 was grounded in the *Picker* decision, which relied on a different, earlier version of the rule:

Furthermore, this Court finds Pioneer's reliance on *Picker* as evidence of a per se rule against adverse representation misplaced. When *Picker* was decided, DR 5–105(B) read: "A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, *or if it would likely to involve him in representing different interests.*" 670 F.Supp. at 1365 n. 3 (emphasis added). This last phrase has been removed from DR 5–105. Thus, when *Picker* was decided, simply representing differing interests constituted a violation of DR 5–105, but now there is only a violation *if* the attorney's "independent professional judgment...will be or is likely to be adversely affected."

*Id.* The Court finds that SST's position on consent is likewise based upon an outdated version of DR 5–105.

Finally, Plaintiff signals to the Court its own precedent, in *Cincinnati Bell v. Anixter Bros.*, 1994 WL 1877173, 1994 U.S. Dist. LEXIS 21012 (S.D. Ohio 1994), in which this Court disqualified a law firm, Frost & Jacobs, after having found that the firm's advancing of the interests of Cincinnati Bell would adversely affect the interests of another Frost & Jacobs client, the sister subsidiary to Anixter (*Id.*). The Court stated in *Anixter* that it could not "imagine how an attorney can maintain a duty of undivided client loyalty to a client, while at the same time zealously attempting to exact millions of dollars of damages from a sister corporation." 1994 WL 1877173 *3, 1994 U.S. Dist. LEXIS 21012 *9. Plaintiff argues that in the case at hand, the conflict is much more direct: Thompson Hine represents Defendant while Plaintiff is also a current Thompson Hine client (doc. 28). As such, Plaintiff argues that this fact militates even more strongly for disqualification (*Id.*)

Defendant posits that *Anixter* can be distinguished on the grounds that it involved a sister corporation, and the Court found that a law firm's simultaneous adverse representation of sister corporations could have an adverse impact on the corporate parent (doc. 15). Defendant argues that this case involves no sister corporation nor any facts showing that simultaneous representation could have an adverse impact on the financial health of a parent corporation (*Id.*). The Court does not find this argument persuasive. However, the Court does find two facts that clearly distinguish the present case from *Anixter*.

The first fact is that the concurrent representation in *Anixter* did not involve a client who had essentially left an incidental matter with Frost & Jacobs, while basically taking all its business elsewhere. The second fact is that Frost & Jacob's representation of Itel Rail, the sister subsidiary to Anixter Brothers, Incorporated, in the *Anixter* case, involved "sizeable business litigation." 1994 WL 1877173 *2, 1994 U.S. Dist. LEXIS 21012 *8. In this case, the Court is not convinced that SST's efforts to jointly appeal an adverse ruling in the U.S. Court of International Trade, is "sizeable" or will involve the same sort of large commitment of time and energy on the part of Thompson Hine's D.C. Counsel. The Court finds credible Thompson Hine's argument that the representation by its D.C. Counsel amounts to a relatively small matter. To date, Thompson Hine's D.C. Counsel, Karyn A. Booth, has charged a total of 2.9 hours to SST's account, which Ms. Bromberg directed her to use when filing the original complaint (doc. 15). The Court is persuaded that Ms. Booth has basically funneled information provided to her by Ms. Bromberg. Ms. Booth's affidavit indicates that she has not performed any work in connection with the refund complaint since November 7, 2001, that she has not communicated any confidential client information to any attorney involved in the present case, and that none of the information SST used in filing the refund complaint bears any relationship to the allegations in this case (doc. 15). This sort of representation, unrelated, in a distant forum, and under the direction of a different attorney, is too attenuated to serve as a basis for disqualification.

The facts of this case are on point with those of *Pioneer–Standard* rather than those of *Anixter*. Consequently, Thompson Hine has demonstrated that its Washington D.C. attorney, Karyn Booth, can represent SST Bearing as co-counsel with Ms. Bromberg in the U.S. Court of International Trade appeal while its Cincinnati counsel concurrently represent Maytag in the case at hand. The Court is convinced

that the Thompson Hine attorneys can represent SST and Maytag with equal vigor, without conflict of loyalties, and without using confidential information to the detriment of either client. Thompson Hine has therefore rebutted the presumption against concurrent representation.

## IV. CONCLUSION

The Court finds an inadequate basis for disqualification of Defense Counsel in this case. SST has not demonstrated how Thompson Hine's former representation is substantially related to the matter at hand nor how that confidential information is at risk. Thompson Hine has successfully rebutted the presumption against concurrent representation. In addition to these reasons, the Court finds that disqualification in this case would be inherently unfair to the Defendant, Maytag, who has also had a longstanding relationship with Thompson Hine. In simplest terms, Plaintiff's motion appears to the Court to be more a litigation tactic than a bona fide effort to protect itself from a real threat of a conflict of interest or breach of confidentiality. SST chose to take its legal business elsewhere and does not possess veto power over Thompson Hine's ability to serve its other clients.

Consequently, Plaintiff's Motion for Disqualification of Defendant's Counsel is DENIED.

SO ORDERED.